(112 App. Div. 910)

### FOX et al. v. NEW YORK CITY INTERBOROUGH RY. CO.

(Supreme Court, Appellate Division, First Department. April 6, 1906.)

Appeal from Special Term, New York County.

See 95 N. Y. Supp. 251.

Argued before INGRAHAM, McLAUGHLIN, LAUGHLIN, CLARKE, and HOUGHTON, JJ.

George W. Wickersham; for appellant
William W. Niles, for respondents.

(112 App. Div. 822)

### HUDSON & M. R. CO. v. WENDEL et al.

(Supreme Court, Appellate Division, First Department. April 6, 1906.)

EMINENT DOMAIN—CONDEMNATION FOR RAILROAD—LAND SUBJECT.

Under Laws 1891, p. 14, c. 4, § 23, declaring that rapid transit railways in cities of over 1,000,000 inhabitants shall have the right to acquire and hold such real estate or easement or other interest therein as may be necessary to enable them to construct, maintain, and operate such railways, stations, depots, etc., the fact that the franchise granted to such a railroad by the rapid transit board, and the plan of route and terminals with reference to which the franchise was granted, did not mention or include lands subsequently sought to be condemned for a terminal, does not necessarily prevent such condemnation, if it is shown that the land is necessary for the operation of the road.

Houghton and McLaughlin, JJ., dissenting.

Appeal from Special Term, New York County.

Condemnation proceeding by the Hudson & Manhattan Railroad Company against Josephine J. S. Wendel and others. From an order

overruling preliminary motions and objections by the defendants, and appointing a referee to hear and determine the issues, defendants ap-.peal.    Affirmed.

Argued before INGRAHAM, McLAUGHLIN, LAUGHLIN, CLARKE, and HOUGHTON, JJ.

Lewis L. Delafield, for appellant Wendel.

John K. Creevey for appellants Rankin and others.

F. B. Jennings, for respondent.

INGRAHAM, J.    The Hudson & Manhattan Railroad Company presented a petition to the Supreme Court for the condemnation of certain property, particularly described, for the use of its road and terminal station.    The petition alleges that the company was organized under the general railroad law of the state of New York for the construction and operation of a railroad in the city of New York, to be connected with a railroad or railroads in the state of New Jersey; that the railroad to be built and operated is to be an underground tunnel railroad, with approach to the surface in the two blocks of ground situated on the westerly side of Church street, between Cortlandt and Fulton streets, in the city of New York; that the board of rapid transit railroad commissioners for the city of New York issued a certificate or franchise to the petitioners, a copy of which is annexed to the petition, which franchise was duly accepted by the petition; that the board of aldermen of the city of New York have also consented to the construction and operation of the railroad by resolution duly approved by the mayor of the city of New York; that the department of docks and ferries of the city of New York have consented to the construction and operation of the petitioner's railroad, and the petitioner has also applied for and has obtained the consent of the commissioners of the sinking fund of the city of New York for the construction, maintenance, and operation of the petitioner's railroad, and in lieu of the consent of the property owners the petitioner had obtained the confirmation of a determination by commissioners appointed by the Appellate Division of the Supreme Court in this department that the said railroad ought to be constructed and operated; that a map and profile of the route adopted by the petitioners, duly certified by its president and engineer, was duly filed in the office of the clerk of the county of New York, and the petitioner has given written notice to the actual occupants of the land through which the route of the road is designated by said map and profile; and the certain specific property desired to be condemned is then described by metes and bounds, which includes property owned by these appellants.    It is further alleged that the property is necessary for the construction, operation, and maintenance of a tunnel railroad and a suitable terminal station and depot for said railroad, that it is the intention of the petitioner to complete the work for which said property is to be condemned, and that all preliminary steps required by law have been taken to entitle the petitioner to institute this proceeding.

Notice was thereupon given to the owners of the property that this petition would be presented to the Supreme Court of the state of New York on Monday, January 8, 1906, and that the petitioner would then

and there apply to the court for a direction that the issues, if any, raised by the pleadings, be forthwith tried, and that, if no issue be raised, the petitioner and the plaintiff have judgment for the relief demanded in the petition. Upon the return of this notice the appellants herein appeared and made certain preliminary motions and objections to such action and proceeding: First, because it does not appear upon the face of the petition that the petitioner has the right or power to acquire in this proceeding the property of these appellants. This objection was overruled. Several of the parties who appeared in the proceeding filed their answers therein, certain other of the parties appeared, but did not answer, and certain other of the parties interested neither appeared nor answered. Whereupon the court entered an order overruling the preliminary motions and objections, and ordered that the issues raised by the petition and answer be referred to a referee to hear and determine the same; and from this order the appellants appeal.

The objections which were taken and which were insisted upon by the appellants are based upon the fact that there is not included on the plans of the routes, stations, and terminals authorized by the board of rapid transit commissioners the lands of the appellants which are specifically described in the petition. Section 3360, subd. 3, of the Code of Civil Procedure provides that the petition shall contain a concise statement of the facts showing the necessity for the acquisition of the lands sought to be condemned. To meet this allegation the petition alleges:

"Sixth. The public use for which the said parcels of property are required is for the construction, operation, and maintenance in perpetuity of a tunnel railroad and a suitable terminal station and depot for said railroad. The said property is necessary for said use, because it forms a part of the route of said road and the terminal point thereof, as the same are established by the certificate granted by the board of rapid transit railroad commissioners for the city of New York, and also because the tract of land of which it forms a part is necessary as a part of said route and for a terminal station for said railroad."

It seems to be conceded by the appellants that, standing alone, this allegation would be a compliance with the requirements of the statute; but the appellants claim that as the petitioner has incorporated into its petition the franchise granted to it by the rapid transit board, with the plan annexed thereto, and that from these certificates and plans it appears that the appellants' property is not a part of the route of any railroad or terminal station, as established by the rapid transit board, the property sought to be condemned is not a part of the said route and terminal station for said railroad, and therefore the court had no jurisdiction to proceed—the appellants claiming that the allegation of fact showing the necessity of the taking is nullified and destroyed so far as the appellants' property is concerned, by the other facts, also appearing upon the face of the petition, which show the grounds of necessity alleged are untrue so far as the appellants' property is concerned.

The board of rapid transit commissioners authorized the petitioners to lay down, construct, and operate a railway, including two tracks, on a route beginning at the boundary line between the states of New York and New Jersey under the Hudson river at a point nearly opposite the foot of Cortlandt street in the borough of Manhattan, thence running easterly under the Hudson river and dock or bulkhead property on

the easterly bank thereof to the westerly side of West street at a point opposite or nearly opposite or at the foot of Cortlandt street, and thence crossing under various streets to a point in Cortlandt street west of and at or near the westerly line of Church street, and thence curving north-wardly and crossing under Dey street, and thence to Fulton street west of and at or near the westerly line of Church street, thence curving to the west into Fulton street, thence westerly under Fulton street cross-ing under various streets to the westerly side of West street, and thence under dock or bulkhead property on the easterly bank of the Hudson river, whether belonging to the city or to other owners, and thence under the Hudson river to a point in the boundary line between the states of New York and New Jersey nearly opposite the foot of Fulton street; and "to acquire and maintain a terminal station in the easterly portion of the blocks bounded by Greenwich street, Cortlandt street, Church street, and Fulton street, in Manhattan borough, the same being private property, or so much thereof as the tunnel company may find necessary and be able to acquire"; and also "to build and operate a subway for foot passengers under Dey street from the said terminal and station at the westerly side of Church street to Broadway, and thence crossing under Broadway to John street to connect the terminal and station of said company with the station of the rapid transit sub-way at Dey street and John street and Broadway, and there connecting with the stairways leading from such subway station to the surface of Dey and John streets"; and also "to acquire and use, for stations or station extensions, power plants, pumping stations, shafts for access to the surface, and other necessary purposes of the railroad, private prop-erty as the same may be lawfully acquired within the scope of the corpo-rate rights and powers of the tunnel company."

The plans annexed to this certificate designate the route of the road and the location of the stations. Under the general power given to the petitioner they have power to apply for the condemnation of such real property as was necessary to construct the routes and stations thus au-thorized. The question presented to the board of rapid transit commis-sioners was the location of the railroad and its stations. Whether the property that the petitioners seek to acquire is necessary for the con-struction of these roads and terminal station as authorized by the board of rapid transit commissioners is a question to be determined by the ref-eree upon the trial of the issues raised by the answers. It certainly does not conclusively appear from the petition that this property is not nec-essary for that purpose; and, although the property sought to be ac-quired is not directly within the plans of the route and station as ap-proved by the board of rapid transit commissioners, it does not follow that the adjoining property may not be necessary for the proper con-struction of the route, foundations, walls, and approaches, so as to enable the petitioner to connect its road with the underground railroad in the city of New York and with the surface of the streets.

It is unnecessary in this discussion to analyze the rapid transit act and its relation to the general railroad act under which the petitioner was incorporated; but we think that, where the railroad company has acquired from the board of rapid transit commissioners authority to construct a road underground, with certain terminal stations, then un-

der section 23 of the rapid transit act (chapter 4, p. 14, of the Laws of 1891) the corporation has authority to acquire and hold such real estate or easements, or other interests therein, as may be necessary to construct, maintain, and operate such railroad, and such as may be necessary for its stations and other terminal facilities, and that there is presented, therefore, by this petition, the question as to whether the real estate therein described is necessary to construct, maintain, and operate the road as authorized, with its necessary stations and terminal facilities. Such necessity must be established as a fact before the appointment of commissioners to determine the value of the property; but we think there was nothing in the certificate of the rapid transit commissioners that limited the property that the petitioner should acquire to such as was indicated on the plans as terminal and stations, and, the board having authorized the construction of the road and stations by the petitioner, the petitioner then had authority to condemn such adjoining property as was necessary for the proper construction of the road and terminal and stations authorized, and the question of such necessity was one to be determined in the proceeding to condemn the property.

Without, therefore, intimating an opinion upon the question as to whether or not this property sought to be condemned is actually necessary for the proper and convenient construction of the road, terminal, and stations, we affirm this order, leaving that question to be determined by the referee.

The order appealed from is affirmed, with $10 costs and disbursements.

LAUGHLIN and CLARKE, JJ., concur.

HOUGHTON, J. (dissenting). It seems to me that by fair construction the rapid transit act (Laws 1891, p. 3, c. 4, as amended by Laws 1895, p. 895, c. 519) requires that any corporation desiring to construct an underground railway shall obtain from the board of rapid transit commissioners a certificate approving, not only of its route, but of its terminal stations, and that any map approved by that board shall embrace such private lands as it is proposed to take for terminals and other necessary facilities of operation before the corporation can institute condemnation proceedings therefor. Certainly such a road cannot be constructed without the consent of the board of rapid transit commissioners, and section 32 of that act provides that "said board shall fix and determine the locations and plans of construction of the railways upon such route or routes, and of such tracks and facilities" connected therewith, and shall prepare and file a certificate "setting forth in detail the action taken by the said board." Power is further given to modify or to add to such certificate. The whole scheme of the act is to vest supervisory control of such a road in the board of rapid transit commissioners. The size of terminal stations and their precise location is as important as the direction of the route. I do not think it can be that a corporation can obtain consent of that board to a particular terminal station, and then roam at will in condemnation of private lands

not embraced within the map certified by the board of rapid transit commissioners.

This is what the petitioner attempts to do, and I think the preliminary objection should have been sustained, and that the order should be reversed.

McLAUGHLIN, J., concurs.