HUDSON AND MANHATTAN RAILROAD COMPANY, Appellant and Respondent, *v.* JOSEPHINE J. S. WENDEL, Respondent and Appellant, Impleaded with Others.

1. EMINENT DOMAIN — EXTENT OF AUTHORITY TO TAKE PRIVATE PROPERTY FOR CORPORATE USE. In condemnation proceedings by a private corporation an unqualified fee of real property cannot be taken without express authority. In all cases where private property is taken for public use, the extent and quality of the interest taken should be measured by public convenience and necessity.

2. RAILROAD ACT AND RAPID TRANSIT ACT CONSTRUED AS TO TITLE ACQUIRED THEREUNDER BY CONDEMNATION PROCEEDINGS. Where a corporation which was organized under the General Railroad Act, and

became possessed of the powers conferred by the Rapid Transit Act, takes real property in condemnation proceedings, the two statutes must be read together to ascertain the extent of the fee to be taken, and as so read require the construction that the property condemned thereunder is not to be held in fee simple, but only for the uses and purposes of the corporation during the continuance of the corporate existence.

3. Power to Condemn Underground Portion of Street under Rapid Transit Act. Under the authority conferred upon plaintiff to acquire and maintain a terminal and station, the right to occupy the underground portion of a street is coextensive with the power to take private property for such purpose.

*Hudson & Manhattan R. R. Co.* v. *Wendel*, 122 App. Div. 917, affirmed.

(Argued May 20, 1908; decided October 13, 1908.)

Cross-appeals from an order of the Appellate Division of the Supreme Court in the first judicial department, entered December 6, 1907, which modified and affirmed as modified an interlocutory judgment entered upon the report of a referee adjudging that condemnation of the defendant's property is necessary for the public use specified in the petition, and affirmed as modified an order confirming the report of commissioners appointed to ascertain the compensation to be paid for said property. The appeal on behalf of the plaintiff is from so much of the order of the Appellate Division as modifies the judgment and order below.

The facts, so far as material, are stated in the opinion.

*Frederic B. Jennings* for plaintiff, appellant and respondent. The referee's conclusion of law, that the petitioner is entitled to take and hold the real estate in fee simple, upon making compensation therefor, and the judgment in accordance therewith, are correct, and the Appellate Division erred in modifying the said judgment. (*Matter of City of New York*, 74 App. Div. 209; 174 N. Y. 26; *People* v. *Fisher*, 190 N. Y. 478; *Sweet* v. *B., N. Y. & P. R. Co.*, 79 N. Y. 299; *Rexford* v. *Knight*, 11 N. Y. 314; *Eldredge* v. *City of Binghamton*, 120 N. Y. 314; *N. Y. & H. R. R. Co.* v. *Kip*, 46 N. Y. 551; *Story* v. *N. Y. El. Ry. Co.*, 90 N. Y. 172; *Washington Cemetery* v. *P. P., etc., R. R. Co.*, 68 N. Y. 595; *Strong* v. *City of Brooklyn*, 68 N. Y. 9;

*B. P. Comm.* v. *Armstrong*, 45 N. Y. 241; *Matter of City of New York*, 174 N. Y. 34.) The objection upon the alleged ground that the petitioner has not acquired the legal right to place under Cortlandt, Dey and Fulton streets the tracks necessary to connect its main line tracks under those streets with the three westerly switches or side tracks in the station cannot be sustained. (*N. Y. C. & H. R. R. R. Co.* v. *M. G. L. Co.*, 63 N. Y. 326; *People* v. *B., F. & C. I. R. R. Co.*, 89 N. Y. 86.) The finding that the "plaintiff has been unable after effort made in good faith to agree with the defendant Josephine J. S. Wendel, owner of said premises 40 Dey street, for the purchase of her interest in the same, the reason for such inability being that the said Josephine J. S. Wendel was unwilling to sell except at a price far in excess of the real value of said premises," is fully sustained by the evidence. (*Matter of Vil. of Middletown*, 82 N. Y. 200; *Matter of P. P. & C. I. R. R. Co.*, 67 N. Y. 377; *N. Y. C. & H. R. R. R. Co.* v. *M. G. L. Co.*, 5 Hun, 209; *Matter of M. R. Co.*, 2 N. Y. Supp. 282.) The objection that the plaintiff failed to comply with the requirements of section 6 of the Railroad Law is not well taken and cannot be sustained. (*Matter of N. Y., L. E. & W. R. R. Co.*, 33 Hun, 148; 98 N. Y. 664; *People* v. *B., F. & C. I. R. R. Co.*, 89 N. Y. 88; *Matter of S. B. R. R. Co.*, 50 Hun, 406.)

*Lewis L. Delafield, George Flint Warren, Jr.*, and *Alfred Gregory* for defendant, respondent and appellant. Immaterial and incompetent evidence was received, although duly objected and excepted to, upon the issue of the inability of the plaintiff to agree with the defendant for the purchase of her property and the reason therefor. (*Matter of Marsh*, 71 N. Y. 315; *M. E. Ry. Co.* v. *Dominick*, 55 Hun, 198; *R. Ry. Co.* v. *Robinson*, 133 N. Y. 242; *W. M. V. Co.* v. *Brady*, 181 N. Y. 145; *Matter of Village of Middletown*, 82 N. Y. 196–200; *Matter of P. P. & C. I. R. R. Co.*, 67 N. Y. 371–377; *N. Y. C. & H. R. R. R. Co.* v. *M. G. L. Co.*, 5 Hun, 201.) The referee's conclusions of law and the

interlocutory judgment are unauthorized, as there is no finding that the plaintiff gave notice to the actual occupants of the land on which• its route was designated on the map filed by it in the county clerk's office as required by section 6 of the Railroad Law. (*Matter of N. Y., L. & W. Ry. Co.* v. *Scheu,* 3 Hun, 148; 98 N. Y. 664.) The plaintiff has no power or authority to construct or operate a railroad upon or under any part of Dey street except that portion thereof which is immediately adjacent to the terminal or station shown upon the plan and profile annexed to the certificate made by the board of rapid transit railroad commissioners, nor can the plaintiff, by acquiring more land or erecting a larger terminal than is shown upon the aforesaid plan and profile, increase its rights to occupy the adjacent portion of streets to a greater extent than is indicated by such plan and profile. (*H. & M. R. R. Co.* v. *Wendel,* 112 App. Div. 822; 186 N. Y. 535; *McGuire* v. *B. T. Co.,* 167 N. Y. 208; *Trustees of Southampton* v. *Jessup,* 162 N. Y. 122; *S. W. Co.,* v. *City of Syracuse,* 116 N. Y. 167; *Matter of R. El. Ry. Co.,* 123 N. Y. 351; *G. & W. Ry. Co.* v. *N. Y. C. & H. R. R. R. Co.,* 24 App. Div. 335.) The referee's conclusion of law and the provision of the interlocutory judgment to the effect that the plaintiff was entitled to take and hold the defendant's real estate " in fee simple " were clearly erroneous, and the interlocutory judgment was properly modified by the Appellate Division in that respect. (*Eldridge* v. *City of Binghamton,* 120 N. Y. 309; *M. R. Co.* v. *Stroub,* 68 Hun, 90; *R. R. Co.* v. *Robinson,* 133 N. Y. 247; *Embury* v. *Conner,* 3 N. Y. 511; *Washington Cemetery* v. *P. P. & C. I. R. R. Co.,* 68 N. Y. 591; *Miner* v. *N. Y. C. & H. R. R. R. Co.,* 123 N. Y. 242; *Story* v. *N. Y. E. R. R. Co.,* 90 N. Y. 122; *Roby* v. *N. Y. C. & H. R. R. R. Co.,* 142 N. Y. 176; *Heard* v. *City of Brooklyn,* 60 N. Y. 242; *Strong* v. *City of Brooklyn,* 68 N. Y. 1.)

CHASE, J.. The Hudson and Manhattan Railroad Company was organized for the purpose of constructing and operating a tunnel railroad in the city of New York to be connected

with a railroad or railroads within the state of New Jersey, and thereby forming a continuous line for the carriage of passengers and property between a point or points within and a point or points without the city of New York. Thereafter the petition herein was filed for the purpose of acquiring by condemnation certain real property in the city of New York including the property owned by the defendant Wendel, known as No. 40 Dey street.

The defendant Wendel asked to dismiss the proceeding upon the ground that it did not appear upon the face of the petition that the petitioner had the right or power to acquire her said property in this proceeding. The motion was denied and from the order entered thereon an appeal was taken to the Appellate Division where the order was affirmed. (112 App. Div. 822.) From such order of affirmance an appeal was taken to this court and two questions were certified to us as follows : " 1. Can the petitioner, respondent, upon the facts alleged in the petition herein, maintain a proceeding to acquire by condemnation the property of the appellant Josephine J. S. Wendel, in said petition described ?

" 2. Should the preliminary motion made by the defendant Josephine J. S. Wendel to dismiss this proceeding as to her, which said motion is recited in the order of the Special Term of the Supreme Court dated February 6, 1906, and entered in the office of the clerk of the county of New York on the 7th day of February, 1906, have been granted ? "

The order was unanimously affirmed and the first question was answered in the affirmative and the second in the negative. (186 N. Y. 535.) After the motion was denied answers were interposed and a referee was appointed to hear and determine the issues.

The referee decided in favor of the applicant and an interlocutory judgment was entered upon the report of the referee and a final order was thereafter entered confirming the report of the commissioners appointed by such interlocutory judgment: An appeal was taken from such final order to the Appellate Division of the Supreme Court and notice was

given of intention to review such interlocutory judgment. The judgment was modified as hereinafter stated, but except as modified the judgment and order were unanimously affirmed (122 App. Div. 917), and from such order of affirmance the appeal is taken to this court.

There are but few questions that survive the unanimous affirmance. The appellant Wendel insists that immaterial and incompetent evidence was received over her objection and exception upon the questions relating to the inability of the petitioner to agree with her upon the purchase of her property and the reason of such inability.

The appellant and her brother are each the owners of various pieces of real property in the city of New York some of which were bequeathed to them by their father and some of which they purchased. The real estate business of each was conducted in an office in charge of the brother and in which office was a sign bearing the words, "We have no property for sale." The property in question was purchased for the appellant by her brother without her knowledge and it with other property was leased and managed by him, but none of her property was ever sold. At such real estate office a representative of the railroad company discussed the matter of the sale and purchase of 40 Dey street with the appellant's brother; her brother assumed to speak for her and said that he would not sell the property and mentioned a prohibitive sum, namely, ten million dollars, as his price. An examination of all of the testimony relating to such questions satisfies us that the testimony objected to was properly admitted as part of the facts and circumstances by which the petitioner established the authority of the appellant's brother to speak for her.

The petition describes specifically No. 40 Dey street and demands that it be adjudged that the public use requires its condemnation. Attached to the petition is a copy of the certificate of the board of rapid transit railroad commissioners; the resolution adopted by the board of aldermen; the approval and consent of the department of docks and ferries; the approval and consent of the commissioners of the sinking

fund; the order of the Appellate Division of the Supreme Court confirming the report of the commissioners appointed to determine and report after a public hearing whether said railroad ought to be constructed and operated and granting the consent of the court to the construction and operation of the road as stated in the petition and the certificate of the board of railroad commissioners of the state of New York.

The certificate of the rapid transit commissioners authorized the railroad company "To lay down, construct and operate a railway including two tracks on a route beginning at the boundary line between the States of New York and New Jersey, under the Hudson River at a point nearly opposite the foot of Cortlandt street in the borough of Manhattan, thence running eastwardly under the Hudson River * * * crossing under West street and thence still eastwardly under Cortlandt street crossing under Washington street and Greenwich street to a point in Cortlandt street west of and at or near the westerly line of Church street and thence curving northwardly and passing under private property and crossing under Dey street and thence again under private property to Fulton street west of and at or near the westerly line of Church street, thence curving to the west into Fulton street, thence westwardly under Fulton street * * * still westwardly under the Hudson River to a point in the boundary line between the states of New York and New Jersey nearly opposite the foot of Fulton street."

Said certificate also authorized the railroad company "To acquire and maintain a terminal and station in the easterly portion of the blocks bounded by Greenwich street, Cortlandt street, Church street and Fulton street in Manhattan borough, the same being private property, or so much thereof as the tunnel company may find necessary and be able to acquire, and also to occupy for said terminal and station all or any parts of the underground portions of Cortlandt, Dey or Fulton streets in Manhattan borough contiguous to its said terminal station in said blocks and to lay and operate therein such tracks, sidings and connections as may be found convenient for the operation of the railroad."

It is further therein provided that "The rights herein-before granted to maintain and operate the railroad or necessary or convenient for that purpose shall be held by the Tunnel Company in perpetuity except as may be herein otherwise expressly provided." Each of the consents mentioned in and attached to said petition are as broad as the certificates of the board of rapid transit railroad commissioners.

All of the facts now before us relating to the legal right of the petitioner to acquire 40 Dey street in a condemnation proceeding were presented upon the former appeal and the questions certified to us were answered without overlooking the language of the applicant's franchise.

The appellant Wendel concedes that the prior decision of this court establishes that the railroad company is entitled to acquire such *private property* as is necessary for its terminal and station, but she insists that it has no authority to construct or operate its railroad under any portion of the street other than upon that portion thereof designated as including two tracks on the route expressly mentioned.

The authority conferred upon the railroad company to acquire and maintain a terminal and station is in addition to the authority given to lay down, construct and operate a railroad including two tracks. We have quoted from such consent express authority to acquire and maintain a terminal and station, and also for that purpose to take so much of the private property in the easterly portion of the blocks mentioned as may be found necessary. Such authority is sufficient to include the taking of 40 Dey street. The same paragraph that we have quoted from such consent gives express authority to occupy *for said terminal and station* all or any parts of the underground portions of Dey street contiguous to said terminal station in said blocks and to lay and operate therein such tracks, sidings and connections as may be found convenient for the operation of the railroad.

The right to occupy the underground portion of Dey street for terminal and station and for the laying of tracks, sidings and connections is co-extensive with the authority to take pri-

vate property for that purpose. Although we hold that the railroad company is entitled to take the portion of Dey street contiguous to the appellant's property for the purposes mentioned, the right to take 40 Dey street is not necessarily dependent upon the right of the railway company to lay its terminal tracks upon that portion of Dey street contiguous thereto.

The findings of the court do not show that written notice of filing a map and profile of the route of the road designated was given to the actual occupants of the lands included within such route as provided by section 6 of the Railroad Law.

By the terms of the Rapid Transit Act the rapid transit railroad commissioners (now board of public service commissions) fix and determine the route or routes and location of the site for a tunnel road. No provision is made therein for a change of route by commissioners as provided by the Railroad Law. The provisions of the Rapid Transit Act relating to the location of the route or routes are independent of section 6 of the Railroad Law and the provisions thereof relating to notice are not applicable to such tunnel road.

The referee found that the plaintiff required for its terminal and station for public use a large tract of land, including the premises No. 40 Dey street, and that it required the fee simple title of said premises and all of the same above, below and on the surface for the protection of its station. Upon such finding the Special Term adjudged: "That the petitioner and plaintiff is entitled to take and hold said real estate in fee simple and the leasehold interests therein upon making compensation therefor and that the petitioner is further entitled to the appointment of commissioners of appraisal to ascertain the compensation to be made to the defendants * * * as owners of the said property No. 40 Dey street * * * to be taken for the public use hereinbefore specified."

After the report of the commissioners was made and confirmed the plaintiff entered into complete possession of said premises. On appeal to the Appellate Division the judgment was modified by striking from the paragraph we have

quoted the words " in fee simple" and by inserting in lieu
of the words so stricken from said judgment the follow-
ing words, viz. : " For the uses and purposes of the corpora-
tion during the continuance of the corporate existence," and
as so modified the judgment and said order confirming the
report of the commissioners was unanimously affirmed.   No
opinion was written in the Appellate Division, but it is evi-
dent from the language used by it in modifying the judgment
that it was of the opinion that section 4 of article 1 of the
Railroad Law is applicable to and binding upon the plaintiff.
So much of section 4 of said article as is applicable to this
question is as follows : " Subject to the limitations and
requirements of this chapter, every railroad corporation, in
addition to the powers given by the general and stock
corporation laws, shall have power,

" 1.    *    *    *

" 2.    To take and hold such voluntary grants of real estate
and other property as shall be made to it to aid in the con-
struction, maintenance and accommodation of its railroad ;
and to acquire by condemnation such real estate and property
as may be necessary for such construction, maintenance and
accommodation in the manner provided by law, but the
real property acquired by condemnation shall be held and
used only for the purposes of the corporation during the
continuance of the corporate existence    *    *    *."

The railroad corporation was organized under the General
Railroad Law.   Upon obtaining the certificate of the board
of rapid transit railroad commissioners and its acceptance of
the terms, conditions and requirements thereof, the railroad
corporation became possessed in addition to its already exist-
ing franchises of all the powers conferred by the Rapid Transit
Act upon corporations specially formed thereunder with
respect to its railroads authorized to be constructed as in said
act provided. (Rapid Transit Act, chap. 4, Laws of 1891,
sec. 132, as amended by Laws of 1902, chapter 584.)   By
said Rapid Transit Act it is provided that the corporations
therein mentioned " Shall have the right to acquire and

hold such real estate or easement or other interest therein, or rights appertaining thereto, as may be necessary to enable it to construct, maintain and operate the said railway, or railways, and such as may be necessary for stations, depots, engine house, car houses, machine shops, and other appurtenances specified in the articles of association, and in case any such corporation cannot agree with the owner or owners of such property it shall have the right to acquire title to the same in pursuance of the terms of and in the manner prescribed in title 1 of chapter 23 of the Code of Civil Procedure known as the Condemnation Law." (Laws of 1891, chap. 4, § 23.)

It is further provided therein that "Every corporation formed under this act shall have power: 1. To take and hold such voluntary grants of real estate and other property as shall be made to it, to aid in the construction, maintenance and accommodation of its railway or railways, but the real estate received by voluntary grant shall be held and used for the purposes of such grant only.

"2. To purchase, lease, hold and use all such real estate and other property as may be necessary for the construction and maintenance of its railway or railways and the stations or other accommodations necessary to accomplish the objects of its incorporation. * * *." (Section 24, as amended by chapter 556, Laws of 1892.)

The provisions of the General Railroad Law and of the Rapid Transit Act must be read together to determine the intention of the legislature in this case. In all cases where private property is taken for public convenience the extent and quality of the interest in the property taken should be measured by public convenience and necessity. In construing statutes relating to taking private property for public use the reason for the exercise of the power of eminent domain must be kept in mind and then the rules of law generally accepted as controlling upon the courts in such cases will point to a conclusion in harmony with constitutional private rights and recognized public interests.

In 15 Cyc. 1018 it is said: "In the absence of constitutional

restrictions the legislature in the exercise of its power to authorize the taking of private property for public use is the exclusive judge of the extent, degree and quality of interest which are proper to be taken. It rests wholly in the wisdom of the legislature to say what estate shall be taken. In construing the statutes however it will not be implied that a greater interest or estate can be taken than is absolutely necessary to satisfy its language and object or than the constitution allows. And although a taking of the fee may be authorized where necessary in the absence of express words the statute will not be so construed where its purposes will be satisfied by the taking of an easement. * * * (1021.) In construing a statute authorizing the taking of private property for public use, it will not be implied that a greater interest or estate can be taken than is absolutely necessary to satisfy the language and object of the act, and where the constitution and statute are both silent on the subject nothing more than an easement can be taken."

In Am. & Eng. Ency. of Law (2d ed. vol. 10, page 1068) it is said: "It is within the province of the legislature to determine the estate or extent of interest that may be taken whether an estate for years, for life, a mere easement, a fee absolute or conditional. And where it has prescribed the interest to be taken no other interest can be taken than that specified. The courts enforce a strict construction, and where the quantity and interest to be taken are not definitely set forth by the legislature only such an estate and quantity may be taken as are necessary to answer the purpose in view."

Lewis on Eminent Domain (2d ed. sec. 278) says: "Upon the principle that statutes conferring compulsory powers are to be strictly construed, it follows that where the estate taken is not defined only such an estate or interest will vest as is necessary to accomplish the purpose in view, and where an easement is sufficient no greater estate can be taken."

Randolph on Eminent Domain (Sec. 206) says: "Where a private corporation is the actor the taking of an absolute fee should never be presumed * * * The forcible acquisi-

·tion of an absolute fee by a private corporation seems contrary to the spirit of the eminent domain, although its authorization is probably within the competency of the legislature."

Wood on Railroads (Sec. 245) says: "The state may take or authorize the taking of the fee of land or a mere easement at its discretion, and the question as to whether it authorized the taking of a fee or only an easement is purely one of construction for the courts to be determined in view of the language used in the act giving the authority to take it and of the purposes for which it was taken. * * * As to railroad companies it is generally held in this country that to lands taken for their use in the construction of their railroads they do not in the absence of an express provision to that effect in their charter take the fee, but only an easement therein. * * * The title acquired is an easement but it is an easement in the nature of a fee and in the assessment of damages no difference is made because of the reversionary right but damages for the full value of the land are given."

The provisions of the Rapid Transit Act relating to acquiring and holding property do not expressly direct that the absolute fee of real property may or shall be taken. An unqualified possession of said real property for the purposes of the corporation during the continuance of the corporate existence will answer the purposes of the act, and reading such sections of the Rapid Transit Act with the provisions of the General Railroad Law that we have quoted requires the courts to hold that the real property condemned is to be held only during the continuance of the corporate existence. (*Matter of N. Y. & H. R. R. Co.* v. *Kip*, 46 N. Y. 546; *Washington Cemetery* v. *P. P. & C. I. R. R. Co.*, 68 N. Y. 591; *Sweet* v. *Buffalo, N. Y. & Phila. R. Co.*, 79 N. Y. 293; *Story* v. *N. Y. El. R. R. Co.*, 90 N. Y. 122; *Matter of Water Comrs. of Amsterdam*, 96 N. Y. 351; *Eldridge* v. *City of Binghamton*, 120 N. Y. 309.)

Such a title is defined by this court in *Roby* v. *N. Y. C. & H. R. R. R. Co.* (142 N. Y. 176) in referring to the title of the defendant to a strip of land then under consideration as fol-

lows: "The interest of the defendant in this strip of land was a permanent easement for the uses and purposes of its railroad. (Citing authorities.) While this easement exists the defendant is entitled to the exclusive use, possession and control of the land and the owner of the fee has no right to use, occupy or interfere with the same in any manner whatever. * * * While it has been held in some cases that the owner of the fee subject to the railroad easement has some right to use the land taken not inconsistent with the easement, the better view of the law, supported by the greater weight of authority, is that the use of the railroad company while the easement exists is exclusive of the owner of the fee." (Citing authorities.)

It is believed that a possible reverter of the land is never contemplated in the assessment of damages in such cases, and that the appropriation is regarded as permanent and the damages are awarded upon that basis. (*Miner* v. *N. Y. C. & H. R. R. R. Co.*, 123 N. Y. 242.)

We have not overlooked the fact that the courts frequently affirm the right of municipalities and corporations to take the fee of real property through proceedings in condemnation, but a reference to the authorities will show that they are based upon statutes *expressly authorizing* the taking of a *fee* in behalf of the state (*People* v. *Fisher*, 190 N. Y. 468; *Rexford* v. *Knight*, 11 N. Y. 308), a municipality (*Matter of City of N. Y.*, 174 N. Y. 26; *Brooklyn Park Commissioners* v. *Armstrong*, 45 N. Y. 234), or for particular purposes, as for passenger and freight depots, as provided in section 17, chapter 282, Laws of 1854, and other similar statutes. The rule is quite universal that an unqualified fee of real property cannot be taken by condemnation by a private corporation without express authority therefor.

The order should be affirmed, without costs to either party as against the other.

Cullen, Ch. J., Gray, Vann, Werner, Willard Bartlett and Hiscock, JJ., concur.

Order affirmed.