John C. Wheeler,
Off. Ref. This action is brought by the plaintiff, pursuant to article 15 (§ 500 et seq.) of the Real Property Law, to quiet title, in aid of an executory contract for the sale of real property made and entered into by and between the plaintiff, as vendee, and the defendant the New York Central Railroad Company (hereinafter referred to as “ Central ”), as vendor.
The property in question, consisting of about 17 acres, is a substantial part of the land formerly used by Central for its terminal and freight yards in the City of Buffalo, and was acquired through condemnation proceedings instituted by Central, or its predecessor in title, in the year 1873. Admittedly, the plaintiff, as purchaser, proposes to devote the property to private use.
The defendants (other than Central), as successors and heirs of the prior owner, assert a reversionary interest, which they *841 claim became absolute when the use of the property for railroad purposes ceased. The contention of both plaintiff and Central is that there was no reversion for the reason that the fee of the lands was taken and full compensation made therefor by Central in the condemnation proceedings.
Thus, the crux of this case relates to the nature and quality of the title of the property obtained by Central in the condemnation proceedings.
If the land was, in fact, taken in fee simple absolute, Central, as condemnor, could sell it irrespective of the use to which plaintiff, as purchaser, may intend to put it. Under such circumstances, it would not revert to the former owner on the cessation of its use for the purpose of the condemnation. On the contrary, where only an easement or a terminable fee was acquired ‘ ‘ and the right to use the property has been lost by forfeiture, nonuser, or abandonment, or by the ending of the public use, or an attempt to divert the property to a private use, the title and rights revert to the original owner.” (30 C. J. S., Eminent Domain, § 460; Heyward v. Mayor, 7 N. Y. 314; Matter of City of New York, 190 N. Y. 350, 357; Brooklyn Park Comm. v. Armstrong, 45 N. Y. 234.)
In order to determine the title acquired by Central it becomes necessary to examine the pertinent statutes in effect in 1873 at the time of the condemnation. As a preliminary consideration, it should be noted that it is within the province of the Legislature, and not of the courts, to determine the nature of the estate to be acquired. (Matter of City of New York [Ely Ave.], 217 N. Y. 45; Matter of City of New York, 10 N. Y. 350, supra; Hudson & Manhattan R. R. Co. v. Wendel, 193 N. Y. 166, 177.)
In Matter of City of New York (190 N. Y. 350, 357, supra) it was stated in the opinion as follows: “ It is the settled law of this state that the character and quantity of the estate in lands to be acquired for public use rests wholly in the determination of the legislature. It may, as in this case it has, authorize the acquisition of the fee, in which case there is no right of reversion left to the original owner.”
But, in construing a legislative enactment delegating to a private corporation the right to take private property for public use, the courts will adopt a strict construction and it will not be implied that a greater interest or estate can be taken than is absolutely necessary to satisfy the language and object of the act. (Hudson & Manhattan R. R. Co. v. Wendel, supra.)
*842 • The first general railroad act passed in this State was chapter 140 of the Laws of 1850. This act was amended by chapter 282 of the Laws of 1854 and by chapter 444 of the Laws of 1857. These statutes contain language granting the railroads the right of eminent domain and defining the nature and extent of the estate in real estate to be acquired. Section 18 of the act of 1850 provides that upon payment of compensation the company is entitled “ to enter upon, take possession of, and use the said land for the purposes of its incorporation, during the continuance of its corporate existence ”. There is no suggestion in the 1850 act that a fee of the land could be acquired. The amendment of 1854 (§17) goes a step further and provides that “ all lands acquired * * * for passenger and freight depots, shall be held by such company in fee ”. (Emphasis supplied.)
The 1857 amendment (ch. 444) was undoubtedly enacted to meet certain unusual contingencies which were not originally anticipated. It was therein provided (§ 2) that “Whenever there shall be one or more of the estates enumerated in article one of title two of chapter one of the second part of the Revised Statutes * * * in any land required by any railroad company for the purpose of its incorporation, such company may acquire such estate and land by means of the special proceedings authorized by the act hereby amended.” The act goes on to provide in great detail what procedural steps should be taken and at the completion thereof the railroad “ shall be vested with the estate which such person, persons or class of persons have, or may be entitled to in said land” and the latter were barred from any right or claim thereunder. Section 2 of the amendment ended with the following sentence: ‘‘ Any railroad corporation in this state may acquire the title in fee, by the special proceedings, hereinbefore mentioned, to any land which it may require for roadway and for necessary buildings, depots and freight grounds. ’ ’
The meaning and purpose of the 1857 act has been considered and construed in Crouch v. State of New York (218 App. Div. 356). The opinion, after referring to the Revised Statutes above quoted, states (p. 360): “the language of the statute * * ’* in its remedial provisions clearly implies that the Legislature was dealing with contingent and other future estates of ‘ persons or class of persons, then in being or not in being ’ ”. The conclusion there reached was that the fee to the land could be acquired under this statute only as to such contingent and other future estates.
*843 It seems clear that under the 1857 act, under which Central predicates its title, a fee of the land could have been acquired whenever there were contingent or other future estates in the premises at the time of the condemnation. Assuming but not deciding that the Legislature, by chapter 198 of the Laws of 1876 amending the Laws of 1850 abolished the right to thereafter acquire a fee title in lands taken by condemnation for railroad purposes, it is, of course, fundamental that any title in fee taken under the 1857 act, prior to the 1876 amendment, could not be divested or otherwise affected.
This brings us to a consideration of the applicability of the 1857 amendment to the particular circumstances of this case. An examination of the record of the condemnation proceedings instituted by Central in 1873 reveals that there were future and/or contingent estates in the land at the time of the condemnation.
The premises in question were owned by Joseph Hottinger at the time of his death on May 11, 1861. He was survived by his widow and five children. Under his will he devised a life estate in the subject premises to his wife, with remainder over upon her death to his three named daughters. In 1873 the widow and the three said daughters and their respective husbands were living. Thus, it appears that the widow held a life estate and the daughters held future interests consisting of remainders (see Moore v. Littel, 41 N. Y. 66; Real Property Law, §§ 35, 36, 37, 40), and the husbands of the daughters held contingent interests by way of courtesy, which depended upon their surviving their respective spouses and upon issue being born of the marriage. Such, then, were the future and contingent interests acquired by the condemnation and they clearly come within the category of the estates contemplated in the 1857 amendment.
The record also reveals that all the Hottinger heirs were cited and appeared by their attorney and that the various procedural requirements of the 1857 amendment were taken and had with meticulous care. The commissioners in their report found that $12,460 was the “ compensation which ought justly to be made by the petitioner ” for the premises “ proposed to be taken * * * for the uses and purposes of said railroad company and for the fee thereof.” Likewise, the order of confirmation recited that the award was for the premises “ and for the fee thereof.” (Emphasis supplied.)
Under these circumstances, it must be held that all parties to the condemnation proceedings understood that an absolute title in fee was to be taken.
*844 The Central entered upon the premises in 1873, pursuant to the order of the Supreme Court, and has occupied the same since that date. There can be no doubt that the premises were required “ for roadway and for necessary buildings, depots and freight grounds.” The proof shows that the Hottinger land was an important part of a large tract owned and operated by Central and used as the Buffalo freight terminal, with major facilities for receiving and shipping, handling freight cars, and maintenance and repair of freight cars and locomotives. A car repair shop, a substantial brick and masonry structure, was erected on the Hottinger premises in 1876; in the same year another large structure was erected which housed a blacksmith’s shop, planing mill, machine shop and boiler shop. There were also many tracks running to the car repair shop and to the area adjoining it. These facilities, erected in an era of rapidly expanding railroad transportation, were unquestionably necessary and required by the railroad for better public service. That they were not constructed until three years after the condemnation is immaterial, inasmuch as the land was acquired in good faith for the purpose of their future construction.
In summary, I conclude and find that the defendant, the New York Central Railroad Company, acquired a fee title, pursuant to the statute of 1857, being chapter 444 of the Laws of 1857, to the subject land condemned in 1873 for public use; that the former owners and their successors in interest were divested of any right, title and interest in said land; and that said railroad may sell the property without liability to the former owners and their successors in interest, and that said former owners and their successors in interest have no reversionary interest in the property sold following abandonment of its public use.
Judgment is accordingly directed in favor of plaintiff, without costs.
Proposed findings of fact and conclusions of law have been passed upon and filed in the Erie County Clerk’s office.
Submit decision and judgment either on stipulation or on five days’ notice.