CHARLES K. KIP and Others, as Executors, etc., of GEORGE GOELET KIP, Deceased, and ELBERT S. KIP, Individually, Plaintiffs, *v.* THE NEW YORK CENTRAL RAILROAD COMPANY and Others, Defendants.

Supreme Court, New York County, April 30, 1931.

*Bigelow & Beatty* [*Ernest A. Bigelow, E. Throop Greer, James A. Dealy* and *Harold D. Beatty* of counsel], for the plaintiffs.

*Alexander S. Lyman* [*Jacob Aronson, Crosby J. Beakes* and *James L. Homire* of counsel], for the defendant New York Central Railroad Company.

*Anderson, Gasser, Ferris & Anderson* [*Jacob Aronson* and *William H. Hayes* of counsel], for the defendant New York and Harlem Railroad Company.

*Charles M. Scheafe, Jr.* [*Madison G. Gonterman* of counsel], for the New York, New Haven and Hartford Railroad Company.

*Rushmore, Bisbee & Stern* [*S. S. Jennings* of counsel], for the 277 Park Avenue Corporation.

SHIENTAG, J. In or about the year 1858 Elbert S. Kip and Elizabeth Kip were the owners in fee simple of the entire square block between Forty-seventh and Forty-eighth streets, and Park and Lexington avenues, now known as 277 Park avenue. They leased the block to the New York and Harlem Railroad Company (hereinafter referred to as Harlem). The premises thus leased were used by the Harlem for railroad purposes, being occupied by tracks, sidings and other railroad structures, including hay, freight and milk stations. In December, 1869, and while the lease was still in existence, the Harlem instituted proceedings to condemn the premises. The petition upon which the condemnation proceedings were based recited that the Harlem required the property for purposes of its incorporation and for the purpose of operating its railroad.

In 1873, and while condemnation proceedings were pending, the Harlem leased its steam railroad to the New York Central Railroad

Company (hereinafter referred to as Central). The latter continued the condemnation proceedings in the name of the Harlem. The Kips resisted such proceedings and the matter was referred to a referee who took testimony. The court at Special Term decided against the Kips and appointed appraisers (*Matter of New York & H. R. R.*, 11 Abb. Pr. [N. S.] 90). The determination of the court at Special Term was affirmed by General Term (11 Abb. Pr. [N. S.] 90, 96), and by the Court of Appeals in 46 New York, 546. The appraisers fixed the value of the property. It was ordered condemned on January 5, 1880, and title vested in the Harlem. The latter was directed to pay Elizabeth Kip, who in the meantime had become the sole owner, the sum of $212,500, which represented full value. This amount was paid to and accepted by her.

The Central, under its contract with the Harlem, operated the road on the condemned premises for many years. By chapter 425 of the Laws of 1903, and the acts amendatory thereof, the defendants Harlem and Central were required to depress the tracks in Park avenue and all yard tracks in the area between Forty-second and One Hundred and Sixth streets, below the street level, including of course, the tracks then existing on the premises condemned. The work of depression and electrification made necessary by this legislation was substantially completed prior to March, 1923.

As part of the improvements made under the acts referred to, two levels, known as the express and suburban levels, of tracks, passenger platforms and platforms for the receipt and delivery of mail and express were constructed, occupying the entire area below the surface of the parcel of land involved in this action, and connecting with similar tracks and platforms northerly and southerly thereto, all of which tracks and platforms have been and now are constantly and intensively used for depot purposes by the defendants New York Central Railroad Company and the New York, New Haven and Hartford Railroad Company and constitute a part of the Grand Central Terminal in the city of New York of the defendant railroad companies.

In 1923 the Central and the defendant New York, New Haven and Hartford Railroad Company leased to the defendant 277 Park Avenue Corporation the surface of the premises obtained by the Harlem under the condemnation proceedings, and gave it the right to erect thereon an apartment house. For such lease and the right to build, the 277 Park Avenue Corporation agreed to, did, and still does pay to the lessors a certain annual rental. In that lease the lessors reserved the use of ventilating ducts or shafts of an aggregate inside area of eighty square feet extending up through

the building and above the roof thereof, together with the right to construct and maintain a pent house and motors and fans upon the roof of the building. The lessors also reserved the right to the exclusive use of a certain emergency stairway and exit leading from the subsurface of the premises to Forty-seventh street. Accompanying the lease, a building agreement was entered into between the lessors and 277 Park Avenue Corporation, pursuant to which an apartment house was erected upon the parcel of land in controversy, above the planes referred to and described in the lease, with supports and foundations below said planes, at locations and in accordance with plans referred to in the building agreement. The building was completed in or about the year 1924, at a cost of approximately $7,000,000, and is occupied by stores, restaurants and residential apartments. The term of the lease was for the period of approximately twenty-one years, with provision for renewal for two additional terms of twenty-one years each, subject to the proviso that the lessors might terminate at the expiration of the first renewal term upon paying the then value of the building.

The Central and New Haven have received the rental fixed in the lease. In 1930 the plaintiffs, as the successors in title to the premises, instituted this action for an accounting and predicate their claim on the proposition that by leasing the surface of the heretofore condemned premises for the construction of an apartment house, defendants are now using a portion of the property for other than railroad purposes. Plaintiffs claim that they are entitled to profits resulting from any use of the condemned property which is not for the purpose of the operation of the railroad.

Defendants claim: (1) That the property was condemned for depot purposes and hence the Harlem took the fee; (2) that in any event whether the Harlem acquired title in fee or a lesser estate, the premises are now substantially devoted to continuous and intensive use for railroad and terminal purposes, and the defendant railroad companies are entitled to exclusive possession, occupation, use and control thereof as against all parties claiming under the original owner of the premises.

It may be assumed at the outset that the Harlem, whether it took the fee or not, obtained by the condemnation the exclusive right to the use and possession of the property during the term of its corporate existence and for the purposes of its incorporation. The corporate life of the Harlem has by successive legislative enactments been extended to April, 2389. The lease to the 277 Park Avenue Corporation can in no way be considered as an abandonment by the Harlem and Central of their rights to the

surface of the property acquired by condemnation. Indeed no such claim is advanced by the plaintiffs in this action. If the railroad after depressing its tracks and terminal had left the surface unused, the plaintiffs could not re-enter and take possession, temporarily or otherwise, of the unused surface on the ground that it was no longer used or needed for railroad purposes.

Nor would the rights of the plaintiffs be enlarged in this respect even if it be assumed that the lease of the surface was entirely for non-railroad purposes. The railroad during its long corporate existence may still have occasion to use the surface for purposes of its incorporation. (*Roby* v. *N. Y. Central & H. R. R. R. Co.*, 142 N. Y. 176.) The contention of the plaintiffs is not that they are entitled to re-enter and resume possession of a portion of the condemned premises because it is now being used for non-railroad purposes, but they contend that while, and to the extent that it is so used, they are entitled to an accounting for resulting profits.

The nature of the estate acquired by eminent domain is a legislative and not a judicial question. (*Heyward* v. *City of N. Y.*, 7 N. Y. 314; *Matter of City of New York*, 217 id. 45.) " It is the settled law of this State that the character and quantity of the estate in lands to be acquired for public use rests wholly in the determination of the legislature." (*Matter of City of New York*, 190 N. Y. 350, 357.)

In order, therefore, to determine the issues here involved, it becomes necessary to consider briefly the statute under which the Harlem was incorporated, and other statutes providing for condemnation of land for railroad purposes. The Harlem was incorporated by chapter 263 of the Laws of 1831. Under section 8 of that act the railroad company was authorized to take such lands as might be indispensable for the construction and maintenance of the railroad and provided that the railroad upon taking the proceedings mentioned " shall be seised and possessed of the fee simple of all such land or real estate, and may enter upon, take and use the same for the purpose of the said road." In 1850 the General Railroad Law was enacted, being chapter 140 of the Laws of 1850. Section 13 of that act provided for the condemnation of any real estate required for the purposes of the railroad's incorporation and section 18 provided that, upon payment of the decreed compensation, " the company shall be entitled to enter upon, take possession of, and use the said land for the purposes of its incorporation, during the continuance of its corporate existence, * * *; and all persons who have been parties to the proceedings shall be divested and barred of all right, estate and interest in such real estate during the corporate existence of the company as aforesaid. All real estate

acquired * * * for the purposes of its incorporation, shall be deemed to be acquired for public use."

By section 17 of chapter 282 of the Laws of 1854 the Railroad Law (Laws of 1850, chap. 140) was amended so as to provide that " all lands acquired by any railroad company by appraisal, for passenger and freight depots, shall be held by such company in fee." The Railroad Law was further amended by chapter 237 of the Laws of 1869, and by such statute it was provided that if any existing railroad required additional real estate or further right to lands for the purposes of its incorporation or for the purpose of running or operating any railroad so owned by it, it could acquire title by the proceedings prescribed in the act of 1850.

The proceedings for the condemnation of the property in question were instituted by the Harlem in 1869. At that time it was already in possession of the property under a lease which still had about nine years to run. The tracks of the railroad were on the property, as were also its hay and milk sheds and its freight house. The property was already being used for depot purposes. The Kips, who were then the owners and lessors of the property, resisted the right of condemnation on the ground, among others, that condemnation did not lie for the acquisition of property of which the railroad company was then in possession as a tenant.

The opinion of the court at Special Term on that point was in part as follows: " That freight depots, at convenient localities, are ' necessary ' to the operation of the petitioners' road, is undeniable. The company, therefore, ' requires ' real estate for that purpose.

" To say that it can get along with a lease, is to say what is equally true respecting every foot of land over which it runs its cars, but to claim that therefore the fee is not ' required,' is to apply a hypercritical meaning to that term, which ought not to prevail against a corporation created for the convenience of the public, and is contrary to the plain intent of the statutes upon these subjects, which make no provision to enable companies to compel *leases*, but always provide for the acquisition of the land itself.

" The necessity, therefore, of having freight depots and land for them, plainly existing, I think it cannot be said that the land is not required now because the lease has not yet expired; because the company is bound in good faith to secure for itself suitable depots before the lease expires, so that the public be not subjected to inconvenience at that time. * * *

" Reading the evidence carefully, I think the petitioners make out their case, and that the facts are not disproved. Against the *theory* that other land will answer equally well (if that were material, which I think is not the case), is the *fact* that this property has

long been used for just the purpose for which the fee is now sought to be acquired. Its ' necessity ' for that purpose has thus been practically established." (*Matter of New York & Harlem R. R. Co.*, 11 Abb. Pr. [N. S.] 90, 91, 93.)

The opinion of the General Term appears in 11 Abbott's Practice Reports (N. S.), 96, where the court said: " The use of this land sought to be taken for a depot by the company for some years past, as well as the proof from the officers of the company, establish the fact that the same is requisite for the purposes of the company.

" The fact of the lease being still unexpired, does not prevent this application. It may be necessary for the company to make further expenditures for buildings, which they cannot do with prudence, on a short lease, and the application for the fee is not unreasonable."

The opinion of the Court of Appeals (*Matter of New York & Harlem R. R. Co.* v. *Kip*, 46 N. Y. 546) points out that the railroad company required the use of the property for depot purposes, requiring large expenditures which the railroad would be reluctant to place upon land of which it was not the owner. With reference to this the court said (at p. 552): " But passenger depots, convenient and proper places for the storing and keeping cars and locomotives when not in use, proper, secure and convenient places having reference to the public interests to be subserved, for the receipt and delivery of freight, and for the safe and secure keeping of property between the time of its receipt and dispatch, or after its arrival and discharge, and before its removal by the owner or consignee, are among the acknowledged necessities for the running and operating the railroad, to the proper prosecution of the business in the interests of the public. They may be regarded as indispensable to the accomplishment of the general purposes of the corporation and the design of the legislative grant." (See, also, further proceedings in *Kip* v. *New York & Harlem R. R. Co.*, 67 N. Y. 227, and *Matter of City of New York*, 217 id. 45, where specific reference is made to the condemnation proceedings by which the Harlem company acquired the title to the premises involved in this action.)

The testimony that was adduced in the condemnation proceedings, from beginning to end, is full of references to the specific depot use that was being made, and that was intended to be made of the property in the future. The record of that proceeding clearly shows that the property was in fact sought to be condemned for depot purposes. Time and again, throughout the proceedings, reference was made to the effect that the taking of the fee was contemplated. Any doubt as to that is completely removed by the court decisions from which we have quoted. The Kips had ample

notice that it was intended to pass the fee to the property and it is significant that the full value of the property was paid to and accepted by them. (See *Thompson* v. *Orange & Rockland Electric Company*, 254 N. Y. 366.)

While the condemnation was instituted under the law of 1869, the prior statutes of 1831, 1850 and 1854, to which reference has been made, were applicable to the same extent as if specifically referred to in the proceedings. In any event, the court has the right to search the record, and to emphasize the substance, rather than the form of the proceeding. The decisions of the Special Term and the General Term clearly recognize this. I hold, therefore, that the property involved in this litigation was condemned for depot purposes and the Harlem was vested with the fee. (*Prospect Park, etc., R. R. Co.* v. *Williamson*, 91 N. Y. 552; *Hudson & Manhattan R. R. Co.* v. *Wendel*, 193 id. 166; *Matter of City of New York* [*Ely Ave.*], 217 id. 45.)

Even if it be assumed that the fee was not acquired by the Harlem, it did obtain an estate in the property sufficient to bar all claims on the part of the plaintiffs. (*Munger* v. *Tonawanda R. R. Co.*, 4 N. Y. 349; *Roby* v. *N. Y. Central & H. R. R. R. Co.*, 142 id. 176.)

" While it has been held in some cases that the owner of the fee, subject to the railroad easement, has some right to use the land taken, not inconsistent with the easement, the better view of the law, supported by the greater weight of authority, is that the use of the railroad company while the easement exists is exclusive of the owner of the fee." (*Roby* v. *N. Y. Central & H. R. R. R. Co.*, 142 N. Y. 176, 180; quoted with approval in *Hudson & Manhattan R. R. Co.* v. *Wendel*, 193 id. 166, 179.)

In the instant case, whatever interest in the property the Harlem may have acquired by condemnation, the fact is that the property is being used intensively and continuously for railroad purposes. Substantially, that is the use to which the property is devoted. The entire surface was so used before the railroad was compelled to depress its tracks and terminal. Now the subsurface is so used intensively, and the surface in part. To penalize the railroad for utilizing part of the surface, temporarily, for other than railroad purposes, and deprive it of revenue obtained therefrom, would not be sound public policy.

Plaintiffs clearly had no right to re-enter and take possession of the surface while it was unused. They have no right to resume possession, because a part of the surface is temporarily devoted to non-railroad purposes; and they likewise have no right to any profits derived from such use. The propriety of devoting the surface of the property to a non-railroad purpose is for the officers

or stockholders, or in a proper case for the duly authorized public authorities. The plaintiffs are not concerned with that. They acquire no rights, because the railroad, instead of allowing a portion of extremely valuable property to remain vacant, has made it revenue producing.

The predecessor in title of the plaintiffs was paid full value for this property, and was divested of all her right, title and interest in and to the property, at least during the corporate existence of the railroad.

I hold, therefore, that the Harlem acquired title in fee to the property, but in any event, plaintiffs have no interest in the property, or in profits resulting from the use to which it is now in part devoted.

Judgment is accordingly directed in favor of the defendants, with costs. Submit decision and judgment on notice. Proposed findings passed upon. Exception to plaintiffs who are allowed thirty days' stay of execution and sixty days to make a case.