Archibald C. Wemple, J.
The problem herein arises out of a proceeding in eminent domain commenced by the Boston, Hoosac Tunnel & Western Railway Company by a petition dated May 2,1883 to acquire certain parcels of land (including the property' in suit) pursuant to 1 ‘ An Act to authorize the formation of railroad corporations, and to regulate the same passed April 2, 1850 and the several acts amendatory thereof and supplemental thereto The title in the proceedings brought in Supreme Court, Saratoga County recites ‘1 to acquire title to lands of Jacob Mabee Fortunately the original petition and proceedings thereon have been located and were made available to the court. The notice of petition to condemn described the parcels sought to be acquired and names the owners thereof. The petition, after reciting the incorporation of the petitioner in 1877 and its purpose of operating a railroad for public use in certain counties in New York State, then states in part as follows:
“ That it caused the line or route of the railway proposed by said articles of association to be constructed, to be surveyed, and maps, profiles and surveys thereof to be made by and in which said route or line was and is designated, and that it located the said road according to such survey and duly filed in the office of the Clerk of each of the said counties a certificate of such location signed by a majority of the directors of said company and duly certified by the President and Chief Engineer of said Company.
“ That thereafter and on the 28th day of March 1883 the Directors of your petitioner by a vote of more than two thirds of their whole number altered and changed the part of the route of said railroad in the County of Schenectady it appearing to said directors that the line of your petitioners railroad could be improved thereby, and thereupon made a survey and map and profile of the route as so altered and intended to be adopted by it in the County of Schenectady and .caused the same to be filed in the office of the Clerk of Schenectady County with a certificate of such alteration and change signed by more than two thirds of the Directors of your petitioner on the 31st day of March 1883.
“ That as your petitioner is informed and believes it has given written notice more than fifteen days since to all actual occupants of the land over which the route of the road as so changed and altered is so designated in the County of Schenectady and which has not been purchased by or given to the petitioner of the time and place such map was filed and that the route designated thereby passes over the land of such occupant.
*385 “ That it is the intention of your petitioner in good faith to construct finish and maintain its railroad.
“ That the real estate described in Schedule A hereunto annexed and forming part of this petition is required for the purposes of the incorporation of said company, to wit, for the purpose of constructing and operating the said proposed railroad and that the petitioner has not been able to acquire the title thereto for the reasons that the owners thereof refuse to sell the same for any reasonable compensation.
“ Your petitioner therefore prays, with a view to acquire title to the said real estate for the purposes aforesaid, for the appointment of three disinterested and competent persons who reside in the County of Schenectady where the said real estate is situated or in some County adjacent to said County of Schenectady and who are freeholders, as commissioners.to ascertain and appraise the compensation to be made to the owners or persons interested in the said real estate, pursuant to the provisions of the said act and for such other or further order as the Court may deem proper to grant.”
The survey or map referred to is also available and has been reviewed by the court. Although neither the papers in the proceeding nor the map were offered in evidence, they were handed up to the court at the conclusion of the trial and it is to be assumed that the parties intended them to become a part of the proof herein. These papers complete the proceedings showing the appointment of appraisers, testimony, fixing of compensation and order of confirmation. Certainly these original documents give first-hand evidence of the purpose and intent expressed therein.
It is to be noted that the petition alludes to use of the lands “to construct finish and maintain its railroad” and that the real estate is required for the “ purposes of the incorporation ”. There is no mention of a plan ‘ ‘ to erect construct or maintain a freight or passenger depot ’ ’ nor do the survey or proceedings indicate such a proposal. It can be concluded that no notice of “depot” use was given to the property owners involved. In the case of Kip v. New York Cent. R. R. Co. (140 Misc. 62, 68-69), the court commented: “ The testimony that was adduced in the condemnation proceedings, from beginning to end, is full of references to the specific depot use that was being made, and that was intended to be made, of the property in the future. The record of that proceeding clearly shows that the property was in fact sought to be condemned for depot purposes. Time and again, throughout the proceedings, reference was made to *386 the effect that the taking of the fee was contemplated. Any doubt as to that is completely removed by the court decisions from which we have quoted. The Kips had ample notice that it was intended to pass the fee to the property, and it is significant that the full value of the property was paid to and accepted by them. (See Thompson v. Orange & Rockland Electric Co., 254 N. Y. 366.) ”
Based on the proceedings in Boston, Hoosac Tunnel and Western Railway Company vs. Mabee and others, just what nature of estate was created — was it a permanent easement, later abandoned, as contended by the plaintiff, or a title in fee as contended by the defendant!
First, let us review the pleadings and proof :
Plaintiff alleges title by virtue of certain deeds acquiring the “reversionary” interests acquired from the heirs of Jacob Mabee and sets up a satisfactory chain of title. Plaintiff alleges that it “is the owner in fee absolute ” and that the defendant De Luke “ unjustly claims or might claim an interest ” in the property by virtue of a deed in 1964 from the Boston and Maine Corporation (successor to the Boston & Maine Railroad which in turn was successor to the condemnor) to a P. & M. Gravel Corporation and then followed by a conveyance in 1964 to the defendant De Luke.
Defendant in its answer merely denied on information and belief the allegations of the complaint. There was no affirmative defense of title or of adverse possession or claim of laches on the part of plaintiff. Defendant’s proof was limited to its deed, its title search and the testimony of two former employees of the railroad that the area of Rotterdam Junction from 1890 to 1932 contained a large complex of repair, storage and transfer facilities. These witnesses were somewhat vague in their identification of the location of buildings and railroad operations in relation to the map in evidence. Admittedly they were not versed in map reading and the impression was given that substantial railroad facilities were maintained by Boston & Maine and New York Central in the vicinity until 1932 and then discontinued. But, whether or not the land in dispute herein was actually included in the large railroad operation was not clearly established.
In fact, on a motion for summary judgment preceding the trial, plaintiff offered an affidavit of one La Blanc, real estate agent for the Boston & Maine Railroad in which he avers; ‘ ‘ There never was a passenger station or freight depot located on property condemned by the Boston, Hoosac Tunnel & Western Railway Company in Rotterdam New York formerly owned by *387 one Jacob Maboe ”, and that “ such passenger, freight stations or freight depot were located approximately one mile from the land in question ”. The affiant was not called as a witness but this information had been given to the court on the motion and was not challenged by the defendant except by a general statement to the effect that Rotterdam Junction embraced a large freight and storage facility.
Chapter 140 of the Laws of 1850 provides for condemnation of real estate by a railroad of property if it is unable to agree for its purchase. After report and confirmation in the special proceeding, section 18 of chapter 140 provides that after payment or deposit of compensation 1 ‘ the company shall be entitled to enter upon, take possession of, and use the said land for the purposes of its incorporation, during the continuance of its corporate existence, by virtue of this or any other act; and all persons who have been made parties to the proceedings shall be divested and barred of all right, estate and interest in such real estate during the corporate existence of the company as aforesaid (Italics by the court.)
Section 17 of chapter 282 of the Laws of 1854 provides: directors may lay out lines, etc., “ and such company shall have the same right and power to acquire title to any lands required for the purposes of such company, under the provisions of this section as it would have in the location of a line of road in the first instance; and all the provisions of the act hereby amended, relative to acquiring title to land for railroad purposes, shall apply to such new or altered line; and all lands acquired by any railroad company by appraisal, for passenger and freight depots, shall be held by such company in fee (Again, italics by the court.)
Obviously, if the condemnor herein acquired the parcel in suit for passenger or freight depot use, or if property owners named in the condemnation proceeding were apprised of such intended use — which was not the case here, or if it could be reasonably inferred from the petition that general railroad use contemplated the erection of such depots which also does not appear to be the fact, then in any of the above a title in fee could have passed to the Boston, Hoosac Tunnel and Western Railway Company and so on down to the defendant De Luke.
On the question of the nature of the estate created in condemnation, Crouch v. State of New York (218 App. Div. 356, 360-361) is cited and the court said: “ When lands are taken by a railroad corporation there is generally a strong probability of permanence in the occupancy thereof. Its title is hostile to that of the fee owner, and its use and occupancy of the lands are *388 exclusive, constituting a permanent easement. (Long Island R.R. Co. v. Mulry, 212 N. Y. 108, 111; 1 Nichols, Em. Dom. [2d ed.] 601.) In acquiring by condemnation such right to use the lands for its own exclusive purposes, compensation is ordinarily based on the total value. (Miner v. N.Y. Central & H.R.R. Co., 123 N. Y. 242.) Nevertheless, such a corporation takes something less than a fee, unless definite authority is given to acquire that interest in the lands. * * * In the cases that arose under the statutes existing prior to 1890 there is no indication that the courts considered that railroad companies acquired a fee in lands for roadway taken by condemnation; and in the discussion that occurs relative to the nature of the title acquired, there seems to be uniform agreement that such title is limited to the easement made necessary by the purpose of operating the railroad. (Heard v. City of Brooklyn, 60 N. Y. 242; Strong v. City of Brooklyn, 68 N. Y. 1; Miner v. N. Y. Central & H. R.R. Co., supra; Scheer v. Long Island R.R. Co., 127 App. Div. 267.) ”. And again at pages 361-362 the court further states: ‘ ‘ The rule is that when private property is taken in the exercise of the right of eminent domain, particularly by a private corporation, the taking is limited to the reasonable necessities of the case, to carry out the purpose for which permission to take is given, so far as the owners of the property are concerned. (Newton v. City of Newton, 188 Mass. 226; Bradley v. Crane, 201 N. Y. 14, 25.) Here, as we believe, the law did not authorize the taking of a fee of property of this nature, nor did the petitioning railroad company have intent to take such title, and would be limited by its intendment and purposes. (Appleton v. City of New York, 219 N. Y. 150, 166; Conklin v. Old Colony Railroad, 154 Mass. 155.)”
Now, assuming that the condemnor obtained an easement, was there an abandonment thereof? The record shows that the Boston & Maine conveyed the property in 1964 to the P. M. G-ravel Corporation which in turn conveyed the property to the defendant De Luke. Neither of the last-named corporations appears to have been railroad corporations nor did they continue use of the property for railroad purposes. There was some testimony to the effect that the property had not been so used for some .years preceding 1964. Now, quoting Roby v. New York Cent. & Hudson Riv. R.R. Co. (142 N. Y. 176, 181) the court said: “An easement may be abandoned by unequivocal acts showing a clear intention to abandon, or by mere non-user, if continued for a long time. The mere use of the easement for a purpose not authorized, the excessive use or misuse, or the temporary abandonment thereof, are not of themselves suf *389 ficient to constitute an abandonment. (Washburn on Easements, 2d ed. 631, et seq. and cases cited; Hoggatt v. Railroad Company, 34 La.An.624; Curran v. City of Louisville, 83 Ken. 628; Proprietors of Locks, etc., v. N.&L.R.R.Co., 104 Mass. 1; White’s Bank of Buffalo v. Nichols, 64 N .Y. 65; Crain v. Fox, 16 Barb. 184; Snell v. Levitt, 110 N. Y. 595.) Under these authorities the acts claimed to constitute the abandonment of an easement must show the destruction thereof, or that its legitimate use has been rendered impossible by some act of the owner thereof, or some other unequivocal act showing an intention to permanently abandon and give up the easement.”
Mention has been made of a recent case decided in the Appellate Division, Third Department, O & W Lines v. St. John (26 A D 2d 145). This case can be distinguished from the ease herein readily by the fact that the title originated from a deed which made reference to condemnation provisions of the railroad law; that it was stipulated in the lawsuit that a portion of the parcel was actually used for depot purposes; and from all these facts the court concluded that it was the intention to purchase the land for depot purposes and that therefore a grant in fee resulted. (Again, italics by the court.)
The facts in this case do not bear out such a clear cut definition or declaration of such purpose, intention or use. The avowed purpose of the acquisition as stated in the petition was for the “ purposes of the incorporation ” and “ of constructing and operating said proposed railroad ” over a specified and altered route according to a certain survey and map. The proceedings are silent as to “ depot ” use and the map merely shows lines running through the property to be acquired.
It must therefore be concluded that the estate acquired in 1883 by the Boston, Hoosac Tunnel and Western Railway was in the nature of a permanent easement; that this easement terminated when the successor in interest, the Boston & Maine, transferred the property for nonrailroad purposes — thereby abandoning the easement — and that thereupon title and right to possession reverted to the heirs of Jacob Mabee. Plaintiff has established by a fair preponderance of the evidence the allegations of its complaint and is entitled to possession of the premises.
Since the defendant Mohawk National Bank failed to plead and presented no proof, it must be concluded that said defendant has admitted the allegations of the complaint. Therefore any interests in the property claimed by said defendant are declared subservient to the title of the plaintiff.