THE MECHANICVILLE AND FORT EDWARD RAILROAD COM-
PANY, Plaintiff, *v.* FITCHBURG RAILROAD COMPANY,
BOSTON AND MAINE RAILROAD, Lessee, and JAMES M.
HUSTIS, as Receiver of the BOSTON AND MAINE RAIL-
ROAD, Defendants.

(Supreme Court, Saratoga Special Term, March, 1918.)

Easement — right acquired by railroad by condemnation.
Ejectment — action in — railroads — deeds — easements — statutes —
   corporations — contracts — estoppel.

The right acquired by a railroad by condemnation is not a fee
but merely an easement to be held only for the purpose for
which the land was condemned; if that use be abandoned or the
right thereto is lost by non-user or otherwise, the property
reverts to the original owner.

In an action in ejectment it appeared that plaintiff, a rail-
road company whose articles of association were filed in 1880,
had never elected a director, never issued legally a share of
stock, never held a stockholders' meeting, never adopted by-laws,
never completed any part of a railroad, never owned any
rolling stock, and never was in possession of any part of the
disputed land. The subscribers to its articles of association
never paid any part of their respective subscriptions, or for
a share of stock, in cash. It further appeared that about six
months after the organization of plaintiff the purchaser in
foreclosure of a mortgage upon the premises in question con-
veyed to plaintiff all his right, title and interest in the property
and franchises secured to him by the referee's deed. It further
appeared that plaintiff's intention to abandon its easement was
declared in its reports of 1891, 1893 and 1894, and its nonuser,
under circumstances showing an intention to · abandon, con-
tinued sufficiently long to extinguish the easement. The pred-
ecessor in title of the defendant purchased the right of way
across the disputed land and built a railroad thereon about
eighteen years after the organization of plaintiff, and it and
its successors have ever since been in possession and used said
land for their railroad purposes, claiming title thereto under
deeds from the several adjoining owners and to the exclusion

of every other corporation and person. *Held,* that defendant railroad company had the right in its defense to assert the extinction of plaintiff's corporate rights and the statute having already declared it no determination of the court that such rights had ceased was required.

Where a contract was attempted to be made in 1882 between plaintiff and an association of persons exercising corporate rights and franchises, all of whose attempted acts were thereafter judicially declared to be illegal and void, and it appears that said contract was not authorized by the board of directors of plaintiff nor executed by it or by any one authorized to act for it, and it never did any act under such contract, defendants were not estopped thereby from denying plaintiff's corporate existence.

ACTION in ejectment.

Walter C. Noyes (John E. MacLean and H. T. Newcomb, of counsel), for plaintiff.

Visscher, Whalen & Austin, for defendants.

VAN KIRK, J.    The action is in ejectment. The land, the title to which is in dispute, is the right of way on which is constructed a railroad operated by the receiver of the Boston and Maine Railroad, beginning at the line of the Rensselaer and Saratoga Railroad (leased to the Delaware and Hudson Company) in Mechanicville and extending to the northerly switch at the Saratoga junction, which is the point where the Boston and Maine line to Boston curves across the Hudson river bridge immediately north of Mechanicville. The length of this right of way is about one and one-quarter miles, and for convenience I will refer to it as the " disputed land," while the track or right of way running northerly from this switch to Stillwater, about two miles in length, I will refer to as the " Stillwater branch."

Briefly the positions of the parties are these: The

plaintiff, whose articles of association were filed in May, 1880, has never elected a director, never issued legally a share of stock, never held a stockholders' meeting, never adopted by-laws, never completed any part of a railroad, never owned any rolling stock, and never was in possession of any part of the disputed land; the subscribers to its articles of association never paid any part of their respective subscriptions, or for a share of stock, in cash. The predecessor in title of the defendant Fitchburg Railroad Company purchased the right of way across this disputed land and built a railroad thereon in or about 1878; and it and its successors ever since have been in possession and used this land for their railroad purposes, claiming title thereto under deeds from the several adjoining owners and to the exclusion of every other corporation and person.

In June, 1869, the Schuylerville and Upper Hudson Railroad Company filed articles of association; its line extended from Mechanicville to Schuylerville in Saratoga county, fifteen miles. In or about 1871 this railroad company acquired by condemnation the entire right of way over the disputed land, except two small pieces which it acquired by purchase. It also acquired right of way by purchase and condemnation north of Saratoga junction. In September, 1871, this railroad company issued a mortgage upon all of its property and franchises then owned and after acquired. In March, 1872, the Upper Hudson Railroad Company filed articles of association, its line to extend from Schuylerville, Saratoga county, to Fort Edward, Washington county, a distance of twelve miles. These two corporations were consolidated under the name of the Schuylerville and Upper Hudson Railroad Company in 1872, with its line twenty-seven miles in length. In an action to foreclose the aforesaid mortgage, this rail-

road property was sold to James Roosevelt for $10,000, and the referee's deed delivered to him.

In May, 1880, the plaintiff, the Mechanicville and Fort Edward Railroad Company, filed articles of association under the provisions of the Railroad Law of 1850, chapter 140, and Laws of 1876, chapter 446, which latter act provided for an organization of companies to take over railroad property which had been sold under foreclosure. On November 5, 1880, James Roosevelt executed a deed to the Mechanicville and Fort Edward Railroad Company, conveying all his right, title and interest to the property and franchises secured by him under the aforesaid referee's deed. Reports were filed by the Mechanicville and Fort Edward Railroad Company with the state engineer and surveyor, and later with the board of railroad commissioners, until 1894. In its report for the year ending June 30, 1893, it stated: '' The construction of this road was commenced, but has been discontinued.'' In a cover for a report of the Mechanicville and Fort Edward Railroad Company for the year ending June 30, 1894, is a letter addressed to the secretary of the board of railroad commissioners, signed S. T. S. Henry, auditor, containing this: '' No report was made, because this corporation is regarded as defunct and its charter abandoned.'' After 1894 no report as required by law was ever filed by the company. Two directors' meetings were held by the directors named in the articles of association, one in 1880 and one in 1881, but none thereafter. On May 7, 1915, almost thirty-four years after the last previous directors' meeting, Mr. Voorhees and Mr. Sprong, two of the thirteen men named as directors in the articles of association, met and, claiming to act as a majority of the surviving directors of this railroad company, went through the form of filling vacancies in the board. The board of directors thus being

4

completed, they adopted by-laws and assumed to authorize the issuing of stock, all of which was issued to the Delaware and Hudson Company, for indebtedness claimed to have been incurred (but it does not appear how) by the Mechanicville and Fort Edward Railroad Company. A quorum was not present. The acts of these two men were futile for any corporate purpose.

Assuming that plaintiff became a corporation upon filing its certificate in 1880, under chapter 446 of the Laws of 1876, it was " subject to all the provisions, duties and liabilities imposed by the act entitled 'An act to authorize the formation of railroad corporations and to regulate the same, passed April 2nd, 1850,' and the acts amendatory thereof, except so far as said provisions, duties and liabilities may be inconsistent herewith, and with the last named rights or franchises." The Laws of 1867, chapter 775, provided that, if any railroad corporation organized under the Laws of 1850 " shall not, within five years after its articles of association are filed and recorded in the office of the Secretary of State, begin the construction of its road, and expend thereon ten per cent on the amount of its capital, or shall not finish its road and put it in operation in ten years from the time of filing its articles of association, as aforesaid, its corporate existence and powers shall cease." This provision is not inconsistent with any provision of the Laws of 1876, chapter 446, and is binding upon the plaintiff. Chapter 405 of the Laws of 1889 provides that: " The time within which the Mechanicville and Fort Edward Railroad Company is required to complete its railroad, is hereby extended for a period of two years from the passage of this act," which took effect June 7, 1889. Thus, if this latter act is valid, the time fixed for the completion of the road was

June 7, 1891. The road was not then completed, nor had any considerable work towards a completion been done on that date. So in the report of 1891 and 1893 we find that the " construction had been discontinued," and in 1894 that the corporation is " defunct and its charter abandoned." Upon June 7, 1891, at least the corporate existence and powers of the Mechanicville and Fort Edward Railroad Company ceased. This provision of the statute is self-operating; by failing to comply with this provision of the statute the corporation became extinct and no judgment or order of the court is required to accomplish a forfeiture of all its corporate rights and powers. *Matter of Brooklyn, W. & N. R. Co.,* 72 N. Y. 245; 75 id. 335; *Matter of Brooklyn, Q. C. & S. R. R. Co.,* 185 id. 171; *Farnham* v. *Benedict,* 107 id. 159; *Goelet* v. *Metropolitan Transit Co.,* 48 Hun, 520; *Brooklyn & R. B. R. R. Co.* v. *Long Island R. R. Co.,* 72 App. Div. 496; *Matter of Brooklyn, W. & N. R. Co.,* 19 Hun, 314.

My attention is called to *City of New York* v. *Bryan,* 196 N. Y. 158, and some remarks of Judge Cullen on page 167, as follows: " But what the legal status is of a railroad partially constructed, where the company fails to complete it within the prescribed period has not as yet been decided by the courts of this state." And further, on page 168: " The legal status of that franchise and the rights of the defendants, or the company to which they succeeded, to the property and structures created in the execution of the franchise should be determined only in a litigation between the people of the state, from whom the franchise sprang, and the defendants, wherein a determination will be binding and conclusive on everybody, and not in a suit between the defendants and third parties, unless it is absolutely necessary so to do." These remarks are not at all applicable to the present case. On page 167,

in the same opinion, Judge Cullen said: " If the defendants should seek to enter upon the streets or parts of streets of the city not already in their possession, the city authorities doubtless could resist such action, for the franchise of the company in respect thereto has ceased. (*Brooklyn S. T. Co.* v. *City of Brooklyn,* 78 N. Y. 524.) " The plaintiff here is attempting to recover lands, of which the defendants and their predecessor have been in possession for about forty years, and of which the plaintiff has never been in possession. Defendant has the right, in its defense, to assert the extinction of plaintiff's corporate rights. *Farnham* v. *Benedict, supra,* 171. It requires no determination of the court that the corporate rights of the plaintiff have ceased; the statute has already declared it.

But the plaintiff claims that, by the contract made on the 9th day of May, 1882, the defendants are estopped from denying the plaintiff's corporate capacity. In March, 1881, the Boston, Hoosac Tunnel and Western Railway Company attempted to consolidate with several other railroads under the name Boston, Hoosac Tunnel and Western Railway Company. In 1883, in an action brought by the People of the State of New York for that purpose, the said attempted consolidation was declared absolutely illegal and void; " that a new consolidation incorporation, under the name of the Boston, Hoosac Tunnel and Western Railway Company, has not been created, and that such pretended consolidation was a mere association of persons exercising corporate rights and franchises, and the same is hereby dissolved;" that all the attempted acts of said consolidation were illegal and void. On May 9, 1882, this illegal consolidation attempted to make the contract referred to with the plaintiff. This contract therefore was not only

entirely invalid, but the Boston, Hoosac Tunnel and Western Railway Company, which assumed to make the contract, was not one of these defendants, was not acting for these defendants or either of them, and its act in attempting to make this contract was not binding upon these defendants or either of them. Nor was the contract authorized by the board of directors of plaintiff; it was not executed by plaintiff, or any person authorized to act for plaintiff. These defendants are not estopped by reason of said alleged contract of May 9, 1882.

It should be noted that plaintiff has never done any act under this alleged contract; it has never constructed any part of the line, or paid any part of the cost, or used the line or any part of it, or made any claim of rights under it, after its execution. On the other hand, in its reports, it publicly abandoned all its rights as a railroad corporation. The acts of officers of the Delaware and Hudson Company and their subsequent claims are not the acts or claims of plaintiff; they were, so far as this record shows, entirely without authority. The Delaware and Hudson Company, so far as the records show, did not attempt to absorb, or breathe life into the deceased plaintiff company, until December, 1915.

It is claimed also that the contract of May, 1882, was superseded by the contract of 1890, which purports to have been executed by the Mechanicville and Fort Edward Railroad Company, by James Roosevelt, president, and the Fitchburg Railroad Company, by H. S. Marcy, president. (This contract was not authorized by plaintiff.) Plaintiff's position is entirely untenable. The agreement of 1890 referred only to the Stillwater branch. This is disclosed, not only by the contract itself, but is made entirely plain by the correspondence preceding the making of the

contract. At some time the Delaware and Hudson Company, without any apparent right, constructed the Stillwater branch for the purpose of conveying freight to and from certain mills in Stillwater, and operated thereon a freight service. In 1890 it took up its tracks and discontinued this service. The Fitchburg Railroad Company desired this service to be continued and consequently the contract of 1890 was made, covering solely this Stillwater branch. This contract of 1890 has no reference to the disputed land and has no bearing upon the issues in this case.

The plaintiff has lost its rights in the disputed lands. Its claim to these lands is that they had been acquired by the Schuylerville and Upper Hudson Railroad Company, to whose rights plaintiff succeeded by reason of the foreclosure, plaintiff's organization as a corporation, and the deed from James Roosevelt. All of the disputed land was acquired by condemnation, except two very small pieces. The right acquired by condemnation is an easement and not a fee. *Roby* v. *New York Cent. & H. R. R. R. Co.,* 142 N. Y. 176; *Hudson & M. R. R. Co.* v. *Wendel,* 193 id. 166. The easement is held for the purpose for which the land is condemned and for no other purpose. If the use for which the property is condemned is abandoned, or the right to that use is lost, by non-user or otherwise, the property reverts to the original owner. Laws 1850, chap. 140, § 18; *Heard* v. *City of Brooklyn,* 60 N. Y. 242; *Strong* v. *City of Brooklyn,* 68 id. 1. Without determining whether or not the Schuylerville and Upper Hudson Railroad Company was a legal corporation and what rights were conveyed to James Roosevelt under the foreclosure, it does appear that plaintiff's line was not completed within the period required by the statute, and that plaintiff abandoned its easement and lost it by non-user. Plaintiff's inten-

tion to abandon its easement was declared in its reports in 1891, 1893 and 1894, and its non-user, under circumstances showing an intention to abandon, continued sufficiently long to extinguish the easement. *Roby Case, supra; Snell* v. *Levitt,* 110 N. Y. 595. Plaintiff's corporate rights and powers ceased, its easement was extinguished and the lands condemned reverted to the original owners. Plaintiff has no title or right of present possession in the disputed lands.

If the plaintiff had life and could maintain this action as to the two small pieces acquired by purchase, the court would not grant peremptory ejectment, but would temporarily enjoin this action and give to the defendant a reasonable time to acquire said land by purchase or condemnation.

The Boston, Hoosac Tunnel and Western Railway Company acquired its right of way by purchase, constructed its line over the disputed land in 1877 and 1878, and operated it until 1886 or 1887, when the Fitchburg Railroad Company succeeded to all the property rights and franchises of the Boston, Hoosac Tunnel and Western Railway Company. The Fitchburg operated this railroad until 1900, when it was leased to the Boston and Maine Railroad, which, as lessee, and through its receiver, has operated the line to the present day. The Fitchburg Railroad Company is a railroad corporation and is the owner of the disputed land.

The correspondence between the officers of the Delaware and Hudson Company and officers of the Boston and Maine Railroad, which was marked in evidence, is immaterial; it does not appear that the officers of the Delaware and Hudson Company had any authority to speak for the plaintiff, and it does not appear that the officers of the Boston and Maine Rail-

road, the lessee, had authority to speak for the Fitchburg Company, the owner.

There are other questions discussed by the attorneys; but, for the reasons above given, the complaint must be dismissed.

Ordered accordingly.