MARION E. CROUCH and Another, Appellants, *v.* THE STATE OF NEW YORK, Respondent.

Fourth Department, November 9, 1926.

**Railroads — appropriation of land in Rochester for Barge canal terminal — reversion claimed on ground railroad, originally acquiring land, acquired easement only, and that on appropriation, said lands reverted to claimant — land was originally acquired in 1890 for railroad purposes through condemnation proceedings — Laws' of 1850, chap. 140, as amd. by Laws of 1854, chap. 282, and Laws of 1857, chap. 444, which govern this case, did not authorize taking fee of land for general railroad purposes — original railroad did not acquire fee to land used for general railroad purposes — statement in order confirming report of commissioners that amount allowed included payment "for the fee" cannot be given effect of giving railroad fee — lands occupied for depots, etc., passed in fee to railroad under amendment of 1854 — claimant is entitled to compensation as to lands used for general railroad purposes.**

The State of New York appropriated certain lands on "Crouch's Island" in the city of Rochester for a canal terminal, and the claimant contends that he owns the fee of the land, and bases his contention on a reversion of the fee upon the appropriation by the State of the land, which had for many years been used by a railroad. The original railroad acquired the land in condemnation proceedings in 1890, and, under the statutes then in force and governing the proceedings (Laws of 1850, chap. 140, as amd. by Laws of 1854, chap. 282, and Laws of 1857, chap. 444), the railroad did not acquire the fee of the land in so far as it was used for general railroad purposes, but, under the amendment of 1854, it acquired the fee of the land which was used for passenger and freight depots.

Accordingly, upon the appropriation of the land by the State, the easement of the railroad in the land taken for general railroad purposes was terminated and the fee reverted to the plaintiff, and he is entitled to be paid therefor.

A statement in the order in condemnation proceedings, confirming the report of commissioners, to the effect that the amount allowed included payment "for the fee," cannot be given effect as passing the fee to the railroad, for an erroneous recital in an order is not a judicial determination and is entitled to no weight.

APPEAL by the claimants, Marion E. Crouch and another, from a judgment of the Court of Claims in favor of the defendant,

entered in the office of the clerk of said court ·on the 21st day of March, 1925, dismissing claimants' claim upon the merits.

*Benton, Lewis, McKay & Bown* [*Clarence W. McKay* of counsel], for the appellants.

*Albert Ottinger, Attorney-General* [*John H. Clogston, Deputy Attorney-General,* of counsel], for the respondent.

DAVIS, J.　On July 1, 1917, the State of New York appropriated certain lands on " Crouch's Island " in the city of Rochester for a canal terminal.　The lands in question were occupied at the time for railroad purposes by the Lehigh Valley Railroad Company under a long lease obtained through other corporations which had built and operated a railroad thereon.

The claimant Marion E. Crouch (successor in interest to a prior fee owner) asserts ownership of a reversionary interest which he claims became absolute when the use of the lands for railroad purposes ceased.　On the part of the State the principal argument is that there was no reversion for the reason that the fee of the lands was taken and full compensation made therefor by the railroad corporation in condemnation proceedings.　This the claimant answers by saying that the law did not permit railroad corporations to take the fee.

The facts were stipulated.　There was no proof of damages, the parties evidently reserving that question until the determination of their legal status.　The conclusions of law made by the Court of Claims are in favor of the State, to the effect that the fee was acquired and claimant has no reversionary or other interest in the property; and the claim was dismissed.

It was early in 1890 that the Rochester and Honeoye Valley Railroad Company (the predecessor of the lessee) began its proceedings to condemn lands which included those of claimant's grantor.　The petition states that the lands " are required for the purpose of constructing and operating its proposed road, and are shown upon its said maps and surveys, * * * and for the necessary stations, depots, switches and other terminal facilities required for its business; " and asked for the appointment of commissioners to appraise the compensation to be made for the lands so to be taken.　Commissioners were appointed who made award of compensation to the respective owners and their report was confirmed by an order of the Supreme Court.

The law then in effect authorizing the formation of railroad corporations and regulating the same was chapter 140 of the Laws of 1850, as amended by chapter 282 of the Laws of 1854 and chapter 444 of the Laws of 1857.　Other amendments may be

disregarded as of no pertinence here. In those statutes were found the provisions giving to railroads the right of eminent domain and defining the title of real estate it thus acquired. In section 18 of the act of 1850 it was provided that on making compensation for the land the company should be entitled " to enter upon, take possession of, and use the said land for the purposes of its incorporation, during the continuance of its corporate existence; " and " all real estate acquired by any company under and pursuant to the provisions of this act, for the purposes of its incorporation, shall be deemed to be acquired for public use."

Nothing was said in the statute of 1850 about any right to acquire a fee. While the Legislature may determine the extent of the title to be acquired by a railroad corporation by condemnation, the general rule is that unless express authority to take a fee is given, the railroad company acquires title only in the nature of an easement. (*Hudson & Manhattan R. R. Co.* v. *Wendel*, 193 N. Y. 166, 177, 179.) The provisions of such an act will be strictly construed and the quantum of the title to be taken will not be extended by implication. (*People ex rel. Washburn* v. *Common Council, Gloversville*, 128 App. Div. 44, 49; *Matter of Water Commissioners of Amsterdam*, 96 N. Y. 351, 357.)

The amendment by chapter 282 of the Laws of 1854 provided (§ 4) that " All real estate acquired by any railroad corporation, under and pursuant to the provisions of this act, for the objects and purposes herein expressed, shall be deemed to be acquired for public use." And it further provided (§ 17): " And all lands acquired by any railroad company by appraisal, for passenger and freight depots, shall be held by such company in fee.'

The amendment of 1857 (Chap. 444) is somewhat difficult to understand. It provided in brief that " Whenever there shall be one or more of the estates enumerated in article one of title two of chapter one of the second part of the Revised Statutes entitled, ' Of the creation and division of estates,' in any land required by any railroad company for the purpose of its incorporation, such corporation may acquire such estate and land by means of the special proceedings authorised by the act hereby amended." It was then provided that the railroad company," in addition to the statements now required by said act, shall set forth and state in its petition, the facts in relation to any such estate, and the person, persons or class of persons, then in being or not in being, who are or may become entitled in any contingency, to any estate as aforesaid, in such land and may pray that such estate may be acquired, and such persons may be bound by the said proceedings." It then provided that the court should appoint an attorney to appear and " represent

the rights, interests and estate of the person, persons, or class of persons aforesaid in any such land, and to protect the same," if no appearance had been made by them. It was made the duty of the court on or after confirmation of the report to ascertain " the rights, interest and estate of such person, persons or class of persons, in the land so appraised, and in the compensation awarded therefor," and to determine the amount to which each was entitled or might become entitled " as the same shall arise or become vested in them respectively; " and to provide for payment or investment of the share of a person or class who had some future or contingent interest. When all this was done and the company had paid or secured payment of the sums so determined, it acquired and " shall be vested with the estate which such person, persons or class of persons have, or may be entitled to in said land," and the latter were barred from any right or claim therein. Section 2 of the statute ended with the following sentence: " Any railroad corporation in this State may acquire the title in fee, by the special proceedings, hereinbefore mentioned, to any land which it may require for roadway and for necessary buildings, depots and freight grounds."

It is the theory of respondent, adopted by the learned court below (124 Misc. 564), that this statute authorized the taking of any lands in fee, and that claimants' lands were so taken.

We know little of the history of the enactment of the statute, but the purposes on its face are reasonably plain, when considered with preceding legislation. The discussion relative to the particular estates and the persons having an interest therein would indicate a legislative intent to limit the scope of the statute to such estates. The earlier statute of 1850 (Chap. 140) providing for the formation of railroad corporations and their regulation, was adopted when the building of railroads and their use as a means of transportation were comparatively new. In that statute a method was provided of acquiring title by appraisal to lands the corporation was unable to purchase " required for the purposes of its incorporation." (See §§ 13–20.) The corporation was required to state in its petition a description of the land and the names and residences of the parties " who own or have, or claim to own or have estates or interests in the said real estate." If any were infants or idiots or persons of unsound mind or were unknown, it was necessary to state those facts, and the petitioner might make statements as to liens and incumbrances on the property. The procedure relative to service on such parties was regulated.

No doubt experience demonstrated that the statute was somewhat incomplete, as was to be expected. There was no definite provision for acquiring the interests of those holding remainders,

contingent interests or other future estates, or those interests represented by various tenancies either for life, the life of another, or for years. The statute of 1857 refers at the outset to " one or more of the estates enumerated in " the Revised Statutes, and the article referred to (1 R. S. 721 *et seq.*) includes estates of inheritance which continue therein to be termed a fee and " denominated estates of freehold." Literally, such estates might be deemed included in the statute. Nevertheless, the language of the statute, from which we have quoted, in its remedial provisions clearly implies that the Legislature was dealing with contingent and other future estates of " persons or class of persons, then in being or not in being," and there is no purpose of changing the procedure or the extent of the title taken of owners in fee, fully provided for in the earlier statute. As to such contingent and other estates, the amendment provided that the corporation " *may* acquire the title in fee * * *." It can readily be understood that where the eventual owners were yet unborn, or there were other practical reasons, the acquisition of the fee might be desirable. But as to lands owned in fee by an adult person, as in this case, neither the purpose of the statute nor the intent of the corporation expressed in its petition at the time, as we shall presently point out, contemplated the taking of the fee for the roadway.

The legal question presented may then be reduced to the simple proposition as to whether the corporations owning and leasing the railroad were able to turn over to the State complete title to the property in question when the lands were appropriated; and if not, may the claimant as successor to the right of the reverter claim damages against the State for the appropriation of his interest.

As was said by HOLMES, Ch. J., in *Emery* v. *Boston Terminal Co.* (178 Mass. 172, 184): " If there is such a thing as a new title known to the law, one founded upon a taking by the right of eminent domain is as clear an example as can be found." When lands are taken by a railroad corporation there is generally a strong probability of permanence in the occupancy thereof. Its title is hostile to that of the fee owner, and its use and occupancy of the lands are exclusive, constituting a permanent easement. (*Long Island R. R. Co.* v. *Mulry*, 212 N. Y. 108, 111; 1 Nichols Em. Dom. [2d ed.] 601.) In acquiring by condemnation such right to use the lands for its own exclusive purposes, compensation is ordinarily based on the total value. (*Miner* v. *N. Y. Central & H. R. R. R. Co.*, 123 N. Y. 242.) Nevertheless, such a corporation takes something less than a fee, unless definite authority is given to acquire that interest in the lands. Subsequent revisions of the Railroad Act of 1850, as amended, indicate that there was no legislative intent

in the earlier statutes to permit railroad corporations to take, for its roadway at least, the fee of lands by condemnation. (See Railroad Law of 1890, § 4, subd. 2, as amd. by Laws of 1892, chap. 676; Id. § 7, as amd. by Laws of 1892, chap. 676, and Laws of 1905, chap. 727; Railroad Law of 1910, § 8, subd. 2; Id. § 17.*) In the cases that arose under the statutes existing prior to 1890 there is no indication that the courts considered that railroad companies acquired a fee in lands for roadway taken by condemnation; and in the discussion that occurs relative to the nature of the title acquired, there seems to be uniform agreement that such title is limited to the easement made necessary by the purpose of operating the railroad. (*Heard* v. *City of Brooklyn,* 60 N. Y. 242; *Strong* v. *City of Brooklyn,* 68 id. 1; *Miner* v. *N. Y. Central & H. R. R. R. Co., supra; Scheer* v. *Long Island R. Co.,* 127 App. Div. 267.)

The petition and award, as we have said, proceeded on the theory that the land was to be taken for the purpose of constructing and operating the railroad. There was nothing to indicate that the petitioner desired to obtain a fee in the lands so taken, or believed that it was legally entitled thereto. But among the many recitals in the order confirming the report of the commissioners there is one which states that the commissioners ascertained and determined the compensation which ought to be made by the petitioner to the owners of " the real estate and premises described in said order and which are proposed to be taken by the said petitioner for the use and purposes of said railroad company *and for the fee thereof * * *.*" Great reliance was placed on this apparently accidental phrase by the learned court below, as settling the question that the railroad corporation had taken the fee and the owner had thereby lost any right of reversion. We attach no significance to it whatever. There is nothing in the report of the commissioners indicating that they assumed to fix the value of the fee, or that they were so asked. Such recitals in orders are not judicial determinations and where erroneous are entitled to no weight. The rule is that when private property is taken in the exercise of the right of eminent domain, particularly by a private corporation, the taking is limited to the reasonable necessities of the case, to carry out the purpose for which permission to take is given, so far as the owners of the property are concerned. (*Newton* v. *City of Newton,* 188 Mass. 226; *Bradley* v. *Crane,* 201 N. Y. 14, 25.) Here, as we believe, the law did not authorize the taking of a fee of property of this nature, nor did the petitioning railroad company have intent to take such title, and would be limited by its intendment and purposes. (*Appleton* v. *City of*

---

* Amd. by Laws of 1913, chap. 284.— [REP.

*New York,* 219 N. Y. 150, 166; *Conklin* v. *Old Colony Railroad,* 154 Mass. 155.)

We hold, therefore, that an easement only was taken in the property in question which terminated when the State through its sovereignty diverted the lands from railroad purposes and appropriated them to its own use.

We limit this holding, however, to such part of the lands as were used for general railroad purposes. If any were actually occupied by passenger or freight depots or their appurtenances which were planned at the time condemnation was made, and were included in the award, then under the statute of 1854 the railroad company might have taken a fee in the lands thus occupied. The record does not disclose whether such depots were located in whole or in part on the lands in question. If the railroad company held the fee of the land we do not decide whether, under the circumstances, the appropriation by the State gave the claimants any reversionary interest therein.

Assuming that the lands were used only for general railroad purposes, the claimants would appear to have a valid claim. Taking under the power of eminent domain operates as a sale. (*Vandermulen* v. *Vandermulen,* 108 N. Y. 195.) If the owner of such an easement abandons the property, sells it or devotes it to some purpose foreign to that for which it was acquired, or if it is condemned or appropriated for a new public purpose, the owner of the reversion may assert his right to possession or claim compensation. (*Heard* v. *City of Brooklyn, supra; Strong* v. *City of Brooklyn, supra; Hooker* v. *Utica & M. T. R. Co.,* 12 Wend. 371; *People* v. *Lawrence,* 54 Barb. 589, 619; *Porter* v. *International Bridge Co.,* 200 N. Y. 234; *Mechanicville & Ft. Edward R. R. Co.* v. *Fitchburg R. R. Co.,* 103 Misc. 46; affd., 190 App. Div. 887; *Harris* v. *Elliott,* 10 Pet. 25; *Newton* v. *Manufacturers' R. Co.,* 115 Fed. 781, 786; 2 Nichols Em. Dom. [2d ed.] 1418.)

The theory upon which the case was decided in dismissing the claim on the merits we believe constituted error, and the judgment should be reversed. But as the questions of damages and the location of the freight and passenger depots in relation to the property taken were left undetermined, the matter should be remitted to the Court of Claims for the parties to proceed therein as they may be advised, with costs to appellants to abide the event.

CLARK, SEARS, CROUCH and TAYLOR, JJ., concur.

Judgment reversed on the law, with costs to appellants to abide the event, and the matter remitted to the Court of Claims for the parties to proceed therein as they may be advised.