In the Matter of the CITY OF NEW YORK, Relative to Acquiring Title to Real Property Required for HARLEM RIVER DRIVE from West 155th Street to 8th Avenue, etc., in the Borough of Manhattan. JAY COOGAN et al., Appellants; ALFRED J. BOHLINGER, Superintendent of Insurance of the State of New York, as Liquidator of New York Title and Mortgage Company, Respondent.

Argued June 2, 1954; decided July 14, 1954.

*Samuel Ross Ballin* and *Timothy N. Pfeiffer* for appellants. I. Respondent did not acquire the fee title by adverse possession. (*Heard* v. *City of Brooklyn,* 60 N. Y. 242; *Roby* v. *New York Central & H. R. R. R. Co.,* 142 N. Y. 176; *Hudson & Manhattan R. R. Co.* v. *Wendel,* 193 N. Y. 166; *Miner* v. *New York Central & H. R. R. R. Co.,* 123 N. Y. 242; *Lewis* v. *New York & Harlem R. R. Co.,* 162 N. Y. 202; *Treadwell* v. *Inslee,* 120 N. Y. 458; *Kip* v. *New York Central R. R. Co.,* 140 Misc. 62,

236 App. Div. 654, 260 N. Y. 692; *City of New York* v. *Coney Is. Fire Dept.*, 259 App. Div. 286, 285 N. Y. 535; *Becker* v. *McCrea*, 193 N. Y. 423; *Arents* v. *Long Is. R. R. Co.*, 156 N. Y. 1; *Long Is. R. R. Co.* v. *Mulry*, 212 N. Y. 108.) II. Respondent's foreclosure of the tax lien on the upland (damage parcels Nos. 2 and 3) did not cut off Mrs. Coogan's fee title. (*Ten Eyck* v. *Craig*, 62 N. Y. 406; *Cornell* v. *Woodruff*, 77 N. Y. 203; *Tax Lien Co.* v. *Schultze*, 213 N. Y. 9.)

*Julius B. Sucher* for respondent. I. As of the date of vesting of title in the city, the Superintendent was the fee owner of all of the property in question by virtue of adverse possession. (*Heard* v. *City of Brooklyn*, 60 N. Y. 242; *Roby* v. *New York Central & H. R. R. R. Co.*, 142 N. Y. 176; *Miner* v. *New York Central & H. R. R. R. Co.*, 123 N. Y. 242; *Crouch* v. *State of New York*, 218 App. Div. 356; *Kip* v. *New York Central R. R. Co.*, 140 Misc. 62, 236 App. Div. 654; *Klin Co.* v. *New York R. T. Corp.*, 271 N. Y. 376; *Timpson* v. *Mayor of City of N. Y.*, 5 App. Div. 424; *Knapp* v. *City of New York*, 140 App. Div. 289; *Becker* v. *McCrea*, 193 N. Y. 423; *Madison Ave. Baptist Church* v. *Baptist Church in Oliver St.*, 73 N. Y. 82; *City of New York* v. *Coney Is. Fire Dept.*, 259 App. Div. 286, 285 N. Y. 535; *Lewis* v. *New York & Harlem R. R. Co.*, 162 N. Y. 202; *Upington* v. *Corrigan*, 151 N. Y. 143; *Nicoll* v. *New York & Erie R. R. Co.*, 12 N. Y. 121.) II. Further and independent of his title by adverse possession, the Superintendent acquired a valid fee title to the properties in question by the foreclosure of the tax lien and the mortgage foreclosure. (*Schuylkill Fuel Corp.* v. *Nieberg Realty Corp.*, 250 N. Y. 304; *Goebel* v. *Iffla*, 111 N. Y. 170; *Cromwell* v. *MacLean*, 123 N. Y. 474; *Helck* v. *Reinheimer*, 105 N. Y. 470; *Jordan* v. *Van Epps*, 85 N. Y. 427; *Cornell* v. *Woodruff*, 77 N. Y. 203; *Ten Eyck* v. *Craig*, 62 N. Y. 406; *579 Flatbush Ave. Realty Corp.* v. *Rosruth Realty Corp.*, 250 App. Div. 781.) III. The railroad company obtained a title in fee simple absolute to the properties in question by virtue of the 1919 condemnation and the Superintendent succeeded to that title by foreclosure of a valid first mortgage thereon. (*Thompson* v. *Orange & Rockland Elec. Co.*, 254 N. Y. 366; *Kip* v. *New York Central R. R. Co.*, 140 Misc. 62, 236 App. Div. 654, 260 N. Y. 692, 290 U. S. 636; *Matter of City of Buffalo*, 206 N. Y. 319.)

Dye, J.   In this condemnation proceeding instituted by the City of New York to acquire title to certain lands necessary for Harlem River Drive, so-called, the claimants, Jay Coogan, Gardiner Coogan and Sarah Jessie Coogan appeal by permission of this court from an order of the Appellate Division, First Department, which unanimously affirmed an order of the Supreme Court, New York County, adjudicating that claimant-respondent, Alfred J. Bohlinger, Superintendent of Insurance of the State of New York, as Liquidator of the New York Title and Mortgage Company, is the owner in fee simple absolute of certain damage parcels involved in the proceeding and therefore entitled to the condemnation award therein.

The appellant, Jay Coogan, appeals from the aforesaid order insofar as it determines the ownership of damage parcels 2, 3 and 6 while the appellants, Gardiner Coogan and Sarah Jessie Coogan appeal from the order only insofar as it determines the title to damage parcel 6.   The damage parcels in question are shown on the City's Exhibit 10 as damage parcels 2, 3 and 6 and consist of property lying in the block between West 155th Street and West 156th Street, Eight Avenue and Harlem River Drive — damage parcel 6 being the bulkhead rights along the river.

When the proceeding was instituted both the Superintendent of Insurance and the Coogans made claim to ownership of the property in question, the Superintendent claiming damage parcels 2, 3 and 6 among others not involved in this proceeding, the appellants, Jay Coogan, Gardiner Coogan and Sarah Jessie Coogan claiming title to damage parcel 6 and appellant Jay Coogan also claiming title to damage parcels 2 and 3.

The claim of Jay Coogan originally included damage parcels 4 and 5 as well, title to which is claimed by the city.   At the trial, however, it was agreed to leave the determination of title to damage parcels 4 and 5 to the time of fixation of the award.

Up to 1919, Harriet J. Coogan, the mother of the appellants, was the undisputed owner of damage parcels 2, 3 and 6 and of adjoining property.   In 1919, the Eighth Avenue Railroad Company (hereinafter " Railroad ") instituted a condemnation proceeding to obtain title to damage parcels 2, 3 and 6 for use as a power plant and a car barn.   An order was entered granting Mrs. Coogan the sum of $439,762.20 for the property.   The

Railroad then entered into possession of the premises and used them for railway purposes until May 31, 1935, when it ceased operations by order of the Federal District Court.

While in possession the Railroad executed certain instruments affecting the property as follows:

At the time of the condemnation order it gave a mortgage for the sum of $280,000 to the Columbia Trust Company, purporting to cover the fee of the property. Thereafter, in December, 1926, the Railroad attempted to convey the fee by full covenant and warranty deed to Railways Realty Corporation. Railways Realty at this time executed a $150,000 purchase-money second mortgage of the fee to the Railroad and the entire premises were then leased by Railways Realty to the Railroad.

In May, 1932, the Irving Trust Company, successor to the Columbia Trust Company, assigned the $280,000 original mortgage to the New York Title and Mortgage Company and in August, 1933, the title company was placed in rehabilitation by order of the Supreme Court. A subsequent order dated July 15, 1935, directed the Superintendent of Insurance to liquidate it.

As previously noted, the Railroad ceased operations on May 31, 1935. Thereafter, on June 10, 1936, the Superintendent of Insurance entered into possession on an assignment of rents and profits, so-called, from Railways Realty and on December 18, 1936, the Superintendent, for $52,002.95, purchased a tax lien from the City of New York covering, among others, the present damage parcels 2 and 3 but not damage parcel 6, the bulkhead rights along the Harlem River. The taxes covered by the lien had, we assume, accrued prior to the Superintendent's entry.

In 1939, the Superintendent commenced an action to foreclose (1) the original mortgage made by the Railroad to the Columbia Trust Company, and (2) the tax lien purchased from the city. Mrs. Coogan was named a party defendant and appeared therein by her attorneys but filed no answer. Judgment of foreclosure and sale was executed and a referee's deed given to the Superintendent on March 5, 1941.

The Superintendent's present claim to a valid fee title is based upon: (1) the 1919 condemnation as successor in interest to the Railroad; (2) the foreclosure of the mortgage made by

the Railroad to Columbia Trust Company; (3) the foreclosure of the tax lien, and (4) adverse possession.

The present appellants are the heirs of Mrs. Coogan. Their claim of title is based upon the following contentions: (1) that the condemnation in 1919 granted the Railroad only an easement; (2) that the mortgages given thereon were only on an easement and could not affect the fee title; (3) that the foreclosure of the tax lien did not cut off Mrs. Coogan's title because the Superintendent, as mortgagee in possession, had no right to purchase the tax lien, and (4) that the Superintendent was not in possession adversely for the period required by section 37 of the Civil Practice Act.

Special Term sustained appellants' first two contentions but held that (a) the foreclosure of the tax lien cut off Mrs. Coogan's title as to damage parcels 2 and 3; and (b) that, in any event, the Superintendent of Insurance and his predecessors in title had been in adverse possession for longer than the statutory period. An order determining title to be in the Superintendent was accordingly entered and, as previously noted, has been affirmed in the court below.

Under subdivision 2 of section 8 of the Railroad Law, in substance in effect at the time of the condemnation proceeding in 1919, the land acquired by the Railroad in that proceeding was to be " held and used only for the purposes of the corporation during the continuance of the corporate existence ". This has been construed as granting a railroad only an easement in property taken by condemnation which terminates when the railroad ceases operation and abandons the use of the property (*Miner* v. *New York Central & H. R. R. R. Co.,* 123 N. Y. 242; *Roby* v. *New York Central & H. R. R. R. Co.,* 142 N. Y. 176; *Hudson & Manhattan R. R. Co.* v. *Wendel,* 193 N. Y. 166), and the Railroad could accordingly convey or mortgage only its interest in the property.

In 1939, however, the Superintendent foreclosed the tax lien on parcels 2 and 3 which he had acquired in 1936, six months after entering into possession. Mrs. Coogan was served in that action and appeared therein by competent counsel but did not answer or move with respect to the rights she now asserts in the property. Under ordinary principles of *res judicata,* the

heirs of Mrs. Coogan are barred from asserting a claim their predecessor in title could have made then regarding the validity of the tax foreclosure and their interest in the property (*Goebel* v. *Iffla*, 111 N. Y. 170; *Schuylkill Fuel Corp.* v. *Nieberg Realty Corp.*, 250 N. Y. 304).

On the merits as well, Coogan's present claim in respect to the tax foreclosure does not appear to be well taken. It is contended that the Superintendent, as a mortgagee in possession, was under a fiduciary obligation to pay the taxes and could not therefore purchase a tax lien or foreclose thereon. To this there are two answers.

Under *Ten Eyck* v. *Craig* (62 N. Y. 406), relied on by the appellants, the most a mortgagee in possession is required to do is to pay taxes out of the income of the property. He need advance no money of his own. Here the proof shows that the Superintendent did not go into possession until June, 1936. Less than seven months after that and while the income derived from the property was negligible, the city auctioned off the unpaid tax lien. The Superintendent thus was forced to purchase the tax lien out of other moneys in order to protect his interest in the property. While appellants argue that the Superintendent eventually received sufficient income from the property to pay off this amount, the record indicates that, from 1936 when the Superintendent took possession until 1952 when the city took title, the property had a net deficit of $98,138.71.

Furthermore, according to appellant's own theory, the mortgage was — at most — a mortgage upon an easement. Under such a view, the Superintendent's fiduciary obligation, if any, would, as we see it, extend only to the mortgagor and not to the owner of the reversion, the Coogans, strangers to the mortgage.

Finally, if the mortgage became a nullity in 1935 when the railroad ceased operations, then the Superintendent was not a mortgagee in possession when he purchased the tax lien and he accordingly had every right to purchase the lien on foreclosure.

This brings us to the question of the effect of the railroad's ceasing operations in 1935 and the Superintendent's claim to title by adverse possession. This claim affects all three parcels of land while the tax lien foreclosure determination only affects title to parcels 2 and 3. Accordingly, the Superintendent's

claim to title to damage parcel 6, the bulkhead rights, must depend on this ground alone.

As previously noted, the fee title remained in Mrs. Coogan after the 1919 condemnation, the Railroad acquiring only an easement therein which, by statute, was good only while the land was "held and used * * * for the purposes of the corporation during the continuance of the corporate existence" (Railroad Law, § 8, subd. 2). Accordingly, as long as the Railroad was in existence and continued to use the property for railway purposes, it was in possession in subordination to Mrs. Coogan's title and could not be adverse even though it was mistakenly claiming title to the fee in hostility to the Coogans (*Lewis* v. *New York & Harlem R. R. Co.*, 162 N. Y. 202; *Kip* v. *New York Central R. R. Co.*, 260 N. Y. 692, affg. 236 App. Div. 654, affg. 140 Misc. 62).

However, on May 31, 1935, the Railroad ceased operations by court order and its physical property was sold. The parties have, in fact, stipulated that damage parcels 2, 3 and 6 ceased being used for railroad purposes on that date. The Coogans were thus entitled on that date to take possession of the property (*Heard* v. *City of Brooklyn*, 60 N. Y. 242; *Miner* v. *New York Central & H. R. R. R. Co.*, 123 N. Y. 242, *supra*; *Roby* v. *New York Central & H. R. R. R. Co.*, 142 N. Y. 176, *supra*). Having failed to do so for longer than the statutory period of fifteen years (Civ. Prac. Act, §§ 37, 39), it follows that they are bound by the adverse possession of the Superintendent and his predecessors in title.

Appellants rely on *Roby* v. *New York Central & H. R. R. R. Co.* (*supra*) in support of their claim that their right to re-enter did not accrue until they had actual notice that the railroad had ceased using the property. That case is not, however, authority for that proposition and the holding there is only that in that case there was no showing that the railroad had abandoned its use of the property for a public purpose. Here, however, the proof shows that the Railroad ceased operations and its assets were ordered sold on May 31, 1935. .

Finally, it appears that the Superintendent himself occupied the property adversely to the Coogans for more than fifteen years after the railroad ceased operations. The Superintendent came into possession in June, 1936, and operated and rented

it. While his possession was originally with consent of Railways Realty which claimed a fee title to the premises, it was hostile to the claim of the appellants as the Superintendent claimed possession as a mortgagee of the fee. While it was probably true that the Railroad could not properly give such a mortgage, this did not affect the right of the Superintendent, who claimed, under a written instrument, to hold adversely to the Coogans (Civ. Prac. Act, § 37). To hold otherwise would, in effect, make it impossible to establish adverse possession upon the basis of a written instrument if it developed that the grantor's title was less than a fee. Here the Superintendent and his predecessors in title, Railways Realty, had been in open, notorious, continuous and exclusive possession of the property since 1935, when the railroad ceased operations, claiming an absolute right thereto based upon written instruments.

The order appealed from should be affirmed, with costs.

DESMOND, J. (dissenting). This proceeding was brought by the City of New York to condemn several parcels of land on and near the Harlem River, and the question is as to whether the awards made for three of those parcels belong to respondent Superintendent of Insurance, as liquidator of a mortgage company, or to appellants Coogan. The same parcels had been, in about 1920 (when owned by Harriet G. Coogan, who died intestate in 1947, and was the mother of, and predecessor in title of, appellants) the subject of an earlier condemnation suit brought by Eighth Avenue Railroad Company. Since that earlier acquisition by condemnation was for railroad purposes, it is certain that the interest which passed to the railroad company by that condemnation decree was not a fee title but an easement in the lands for railroad purposes, and that the fee title remained in appellants' predecessors with the right to re-enter if the railroad use should be permanently abandoned, as it was, some years later (*Miner* v. *New York Central & H. R. R. R. Co.*, 123 N. Y. 242; *Roby* v. *New York Central & H. R. R. R. Co.*, 142 N. Y. 176; *Hudson & Manhattan R. R. Co.* v. *Wendel*, 193 N. Y. 166; *Harris* v. *Elliott*, 35 Pet. [U. S.] 25).

In 1935, Eighth Avenue Railroad Company, owner of that easement, being then in receivership, discontinued its railroad

operations, and in 1936, pursuant to court order, permanently abandoned its railroad franchise. Mrs. Coogan then had a right to re-enter, but never did so. Other pertinent facts will be mentioned later, when we discuss the respective positions of the rival claimants. What is undisputable is that in 1935 or 1936, the easement ended and Mrs. Coogan's right to re-enter became absolute. The claim of her children, as her heirs, to this condemnation award is resisted, however, by respondent Superintendent, whose own claim thereto, upheld below, is based: first, on alleged adverse possession; and, second, on his purchase of the parcels at a judicial sale following the foreclosure, at the Superintendent's suit, of a mortgage and a tax lien. We will take up, in that order, those contentions of the Superintendent of Insurance.

But, first, we need some background facts as to how the Superintendent came into the picture. In 1921, Eighth Avenue Railways Company, owner as aforesaid of a railroad use easement in the premises, gave to a bank a $280,000 mortgage purporting to (but obviously not) incumbering the fee of all three parcels. Later, and again seemingly describing a nonexistent fee title, Eighth Avenue gave a deed of the lands to its wholly-owned subsidiary corporation. Meanwhile, and until the 1935 receivership above mentioned, Eighth Avenue, or its subsidiary, continued to apply the property to railroad uses. In June, 1936, the mortgage having meanwhile become the property of New York Title and Mortgage Company, and respondent Superintendent of Insurance being that company's official liquidator, and the mortgage being in default, the Superintendent, under an assignment of rents, took possession (at least to the extent of collecting the rents) of the parcels described in the mortgage. Later in 1936, the Superintendent purchased, for about $52,000, a New York City tax lien covering two of the three parcels described in the mortgage. It sufficiently appears that part, at least, of that $52,000, came not from rents collected by the Superintendent, but from other sources. In 1939, the Superintendent brought an action to foreclose both the mortgage and the tax lien. Mrs. Coogan, predecessor of appellants and then the owner of the rights which appellants are now asserting, was named as a defendant and appeared by attorneys but filed no

answer. The suit went to judgment and sale, and the Superintendent, as purchaser at the referee's sale, took a referee's deed to the parcels.

The Superintendent's claim of adverse possession is untenable as to any of the parcels, since neither he, nor the railroad company or its subsidiary corporation, ever had a possession which was hostile to the fee title of appellants and their predecessors. An unescapable requirement of law is that possession, to be adverse, must be hostile to the true holders of the title (*Belotti* v. *Bickhardt,* 228 N. Y. 296, 302). Accordingly, adverse possession can never be based on possession or use under a license or permit from the owner of the fee (*Matter of City of N. Y. [Piers Old Nos. 8–11],* 228 N. Y. 140, 155; *New York Central & H. R. R. R. Co.* v. *City of Buffalo,* 85 Misc. 78, 90; *Hinkley* v. *State of New York,* 234 N. Y. 309, 316). Possession and use begun with consent are presumed so to continue (*Harrison* v. *New York Central R. R. Co.,* 255 App. Div. 183, 186, affd. 281 N. Y. 653; *Treadwell* v. *Inslee,* 120 N. Y. 458; *Lewis* v. *New York & Harlem R. R. Co.,* 162 N. Y. 202, 221). "Adverse possession must be exclusive, under no permission or license or favor upon the part of the owner; the claim must be under color of independent title, exclusive of any right derived from the actual owner * * * When the entry upon land has been by permission or under some right or authority derived from the owner, adverse possession does not commence until such permission or authority has been repudiated and renounced and the possessor thereafter has assumed the attitude of hostility to any right in the real owner * * * '*if the first possession is by permission it is presumed to so continue until the contrary appears*' [*Lewis* v. *New York & Harlem R. R. Co.,* 162 N. Y. 202, 220]" (*Hinkley* v. *State of New York, supra,* pp. 316–317). That rule, apparently universal throughout the United States, has been properly applied to railroad use easements, the holdings being that possession after the railroad use ends is not "adverse possession" unless and until there has been direct notice, to the title owner, of the hostile claim (*Branch* v. *Central Trust Co.,* 320 Ill. 432; *City of Grand Rapids* v. *Pere Marquette Ry. Co.,* 248 Mich. 686). *Miner* v. *New York Central & H. R. R. R. Co.* (123 N. Y. 242, 250, *supra*) is not to the contrary, since, so far as pertinent at all, that decision depends on its special

facts, including an actually adverse possession by an entirely different corporation. How far our own courts go in enforcing the rule itself is vividly illustrated by *City of New York* v. *Coney Is. Fire Dept.* (259 App. Div. 286, affd. 285 N. Y. 535). There a volunteer fire department, in 1893, took land under a deed from a predecessor of the City of New York, which deed imposed the condition that it be used '' for fire purpose '' only; in 1898 such use was permanently abandoned but the volunteer fire company remained in·possession for about forty years longer. Notwithstanding all that, the courts held, in the *Coney Island* case, that there was no adverse possession by the company and the right of the city to effect a re-entry continued. There was '' no real question of adverse possession '', held the Appellate Division (p. 289), since, after the fire use had been openly abandoned, the city had the right to re-enter at any time it chose. In the present case, the railway use began and continued with the permission of the true owner, the Superintendent's later possession was subordinate to the railroad company's (see *Becker* v. *McCrae,* 193 N. Y. 423, 427) and there never was notice to appellants or to their predecessor that a new and hostile right was being asserted. Thus, adverse possession could not have commenced to run until the Superintendent took the referee's deed in 1941, thereby asserting a new title. But the necessary fifteen years (Civ. Prac. Act, § 35) did not lapse from the time of the delivery of that deed till, in 1952, the city took title to, and possession of, all the parcels, in the course of this present condemnation proceeding. We conclude that there is no basis for the Superintendent's claim of title by adverse possession. '' It would shock that sense of right which must be felt equally by legislators and by Judges, if a possession which was permissive, and entirely consistent with the title of another, should silently bar that title '' (MARSHALL, Ch. J., in *Kirk* v. *Smith,* 9 Wheat. [U. S.] 241, 288).

Respondent's other claim to ownership stands on his foreclosure judgment and referee's deed. As to the foreclosure of the tax lien, we think he must be held to have taken the referee's deed in trust for appellants. No decision has been found with precisely the same facts as ours, but to the facts of our case there is clearly applicable the settled rule of equity that one

in possession of realty whose position is such that he owes some protective or similar duty to the owners of other interests, cannot purchase an outstanding interest and use it to exclude those other persons to whom he has a duty (as to the generality of that rule, see *Burhans* v. *Van Zandt,* 7 N. Y. 523, 526, 527, and, particularly, *Rothwell* v. *Dewees,* 2 Black [U. S.] 613, 614, 619; see elaborate note and numerous citations, 140 A. L. R. 294). Thus, purchase by a mortgagee in possession, of a tax lien, is regarded as payment of the taxes and a foreclosure of the lien is, in equity, a nullity (*Ten Eyck* v. *Craig,* 62 N. Y. 406; *Burchard* v. *Roberts,* 70 Wis. 111; *Shepard* v. *Vincent,* 38 Wash. 493). Quite recently, in *Van Duzer* v. *Anderson* (306 N. Y. 707), we made a similar holding as to the purchase of an outstanding tax lien, by a tenant in common. Here, the Superintendent, not having rent moneys available therefor, may not have been under a duty to buy the old lien, but the question is as to what his position was when he did in fact buy it. He was in possession of the properties in the right of the railroad company, or its subsidiary corporation (*Becker* v. *McCrae, supra*). The railroad company had defaulted in its obligation to pay taxes during occupancy. There was of course no such obligation on appellants or their predecessor to pay those very taxes, or any reason for their doing so. Occupying the premises in the alleged right of the easement holder, the Superintendent, buying such a tax lien, could not equitably use that lien to destroy the fee title on which his own possession depended. If that were possible, the owner of an easement, by mortgaging it, defaulting on the mortgage, and arranging for the payment by the mortgagee of taxes payable by the holder of the easement, and having those taxes foreclosed, could use his own default to enlarge his easement into a fee title.

Nor can respondent claim any right from the purported foreclosure of his mortgage, since the easement on which the mortgage was a lien had ended by nonuser, and the mortgage was a lien on nothing.

Full equity will be done to both sides of this dispute by holding that the award belongs to appellants, subject to a lien thereon, to respondent, for the amount paid by him for the tax lien, with appropriate interest.

The order should be reversed, with costs in all courts, and the matter remitted to Special Term for further proceedings consistent herewith.

LEWIS, Ch. J., FROESSEL and VAN VOORHIS, JJ., concur with DYE, J.; DESMOND, J., dissents in an opinion in which FULD, J., concurs; CONWAY, J., taking no part.

Order affirmed.