ERIE LACKAWANNA RAILWAY COMPANY, Appellant, *v.* STATE OF NEW YORK, Respondent. (Claim No. 50552.)

Fourth Department, April 13, 1972.

*Shults & Shults* (*William A. Argentieri* of counsel), for appellant.

*Louis J. Lefkowitz, Attorney-General* (*Richard L. McHale* and *Ruth Kessler Toch* of counsel), for respondent.

MARSH, J. This is an appeal by claimant from a judgment of the Court of Claims which granted claimant $600 for the permanent appropriation of 2.232 acres without access, 1.082 acres with access, .301 acres permanent arterial easement for highway, .274 acres permanent easement for retaining wall and drainage ditches and pipes, .290 acres in fee without access, and .011 acres with access. Of the $600 awarded claimant, $580 represented direct damages for the appropriation of .068 acres on Depot Street, Hornell, owned by claimant railroad in fee and $20 represented nominal direct damages for the balance of the property appropriated, all in the City of Hornell, whether in fee or by permanent or temporary easements.

Substantially all the land appropriated by the State either in fee, permanent easements or temporary work easements was obtained by claimant's predecessor in condemnation proceeding in 1850 under the Railway Act of 1850. The cases have uniformly held that a condemnation under the 1850 act for railroad purposes vests in the railroad only a permanent easement for railroad purposes during the continuance of the corporate existence (*O & W Lines* v. *St. John,* 20 N Y 2d 17, 20 and cases therein cited). The railroad's property interest taken in a condemnation under the 1850 act has been categorized as a determinable easement in the nature of a fee. The easement is permanent and exclusive so long as it is used for railroad purposes (*Roby* v. *New York Cent. & Hudson Riv. R. R. Co.,* 142 N. Y. 176). The easement is determinable in that if the railroad abandons the use of the property for railroad purposes, the original owners of the property or their successors prior to the condemnation would be entitled to take possession of the property (*Matter of City of New York* [*Harlem Riv. Drive-Coogan*], 307 N. Y. 447, 455). A sale of the property by the railroad for nonrailroad purposes would cut off the interest of the railroad in the easement (*Heard* v. *City of Brooklyn,* 60 N. Y. 242).

The question presented is whether appropriation by the State of New York terminates the railroad's interests and vests the property or title to the right to receive compensation for the appropriation in the holders of the possibility of reverter, that is, the successors to the original owners of the fee. It has been held that condemnation has the same legal effect as a sale by the railroad for nonrailroad purposes and works a forfeiture of its easement and the right to the property or compensation for its taking reverts to the holders of the reversion. "Assuming that the lands were used only for general railroad purposes, the claimants would appear to have a valid claim. Taking under

the power of eminent domain operates as a sale. (*Vandermulen* v. *Vandermulen,* 108 N. Y. 195.)'' (*Crouch* v. *State of New York,* 218 App. Div. 356, 362).

*Vandermulen* v. *Vandermulen* (*supra*) cited in *Crouch* does not support the court's holding that the condemnation of railroad lands works a termination of the railroad's easement and a reverter to the original owners or their successors. In *Vandermulen,* the owners of property condemned by the railroad had a partnership agreement which provided that should any of the lands held subject to the partnership agreement be sold, the proceeds should be divided among the parties to the agreement. The New York Central condemned part of the partnership realty and the legal issue was litigated among the partners as to whether the condemnation was a sale under the agreement, a question totally different from whether a condemnation works a forfeiture of the railroad's permanent easement in favor of the holders of the possibility of reverter. The cases dealing with a determinable fee hold quite the opposite with respect to condemnation and appropriation. Speaking of the nature of the interest obtained by the railroad under a condemnation pursuant to the 1850 Act, the court in *Vandermulen* stated: '' The proceedings operated as a sale of the property taken and a purchase thereof by the company, and the interest acquired, whatever its exact legal character, was scarcely less than a fee. If a technical reversion remained in the defendant, the interest was so remote that its value is scarcely appreciable.'' (*Vandermulen* v. *Vandermulen, supra,* p. 202.)

There is considerable logic to a statutory scheme which prohibits the railroad from condemning private property for railroad use and then allowing the railroad to alienate the property for nonrailroad uses as a common land speculator. Authority is granted the railroad to condemn private property because of the legislative determination that a railroad use is sufficiently imbued with a public purpose to justify an interference with the free market (*Miner* v. *New York Cent. & Hudson Riv. R. R. Co.,* 123 N. Y. 242). The claimant railroad was devoting its property to proper railroad and ancillary uses which were serviced by its spur tracks in the general area of its freight and passenger depot. The major taking of 2.6 acres eliminated the Swift Packing Company structure, the Hornell Readimix Company and railroad spurs to these properties in addition to railroad spurs used exclusively by the railroad for its own tracking purposes. It would be a denial of elementary justice to refuse fair and just compensation to the railroad for the substantial interference with its permanent easement rights

and uses which it had enjoyed over a period of 120 years. Such a denial is inconsistent with the Court of Appeals' determination that due process requires, when easements of light and air are condemned and destroyed by public authority, just compensation be paid to the railroad affected (*Matter of City of New York* [*East 42nd St. El. R. R.*], 265 N. Y. 170). Just compensation may require a payment of more than the interest condemned would command in the open market (*Matter of Port Auth. Trans-Hudson Corp.* [*Hudson Rapid Tubes Corp.*], 20 N Y 2d 457).

The appropriation involved both the interest of the claimant and the possibility of reverter and, since at the time of appropriation the possibility that the reverter would ripen into possession was so speculative and remote, such interest should be given only a nominal value and the entire compensation for the appropriation should go to the railroad holding the permanent easement (*First Ref. Dutch Church* v. *Croswell*, 210 App. Div. 294, app. dsmd. 239 N. Y. 625; *Carter* v. *New York Cent. R. R. Co.*, 73 N. Y. S. 2d 610, affd. 273 App. Div. 884, affd. 298 N. Y. 540).

The question remains as to the measure of damages to be applied to the various takings. The appropriation vests fee title in the State of New York pursuant to subdivision 6 of section 30 of the Highway Law and the State should be required to pay the reasonable value of the interests which it has appropriated or interfered with and which it is conceded claimant originally paid full value for as if it were a fee.

All of the commercial and industrial development which existed prior to the appropriation provided relatively minimal remuneration to the railroad in the form of yearly rentals for the land and charges for the use of spur tracks. An additional economic benefit inured to the railroad in obtaining freight business of the commercial and industrial enterprises to which it leased its lands. Both the claimant's and State's appraisers testified to values as if the land were freely alienable by the railroad for commercial and industrial uses, but differed as to the values to be set for the various takings. Because the Trial Judge held that as a matter of law the railroad was not entitled to such appraised values, only a nominal award was made. While it would appear that the lands held by the railroad would not have the same market value as lands owned in fee and freely alienable to a willing purchaser in the open market based upon their highest and best use due to the limitations of use for railroad purposes placed upon the railroad, the State's valua-

tion as established by its expert testimony reflects a fair evaluation of the elements properly considered in determining just compensation to be paid.

The judgment should be modified by awarding claimant for the total value of land taken $29,305; damages caused by imposition of permanent easement $2,802; rent for temporary easements $75 and for the cost of relocating the outdoor advertising signs $600, or total damages in the amount of $32,782, and as modified the judgment should be affirmed, with costs.

DELVECCHIO, J. P., WITMER, MOULE and HENRY, JJ., concur.

Judgment unanimously modified on the law and facts in accordance with the opinion and as so modified affirmed, with costs to claimant.